**CREAMERY PACKAGE MFG. CO. v. MILLER PASTEURIZING MACH. CO.**

**MILLER PASTEURIZING MACH. CO. v. CREAMERY PACKAGE MFG. CO.**

(Circuit Court of Appeals, Seventh Circuit. March 3, 1925. Rehearing Denied June 3, 1925.)

Nos. 3390, 3391.

1. Patents ⬅328—No. 878,225, consisting of milk-pasteurizing device, held invalid.

Miller patent, No. 878,225, claim 5, for milk-pasteurizing device with metallic heat-conducting wall, *held* invalid.

2. Patents ⬅328—No. 945,570, claims 7, 8, 10, 11, 12, 20, and 21, for large capacity ice cream freezer, valid and infringed.

Miller patent, No. 945,570, claims 7, 8, 10, 11, 12, 20, and 21, for ice cream freezer of large capacity, though consisting of combination of old elements, *held* valid, as producing a hitherto unachieved result, and infringed.

3. Patents ⬅283(1), 289—Plaintiff held not estopped to prosecute suit for infringement, nor guilty of laches in bringing it.

Plaintiff's prior institution of suit against one of defendant's customers for infringement, subsequent dismissal thereof, and change in design of machine manufactured by defendant for purpose of avoiding infringement, *held* not to estop plaintiff's prosecution of present suit, or indicate laches, barring it.

Appeals from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit by the Miller Pasteurizing Machine Company against the Creamery Package Manufacturing Company. From a decree in part for defendant and in part for plaintiff, both parties appeal. Affirmed.

Lincoln B. Smith, of Chicago, Ill., and Livingston Gifford, of New York City, for plaintiff.

Edward Rector, of Chicago, Ill., for defendant.

Before ALSCHULER and EVANS, Circuit Judges, and FITZHENRY, District Judge.

ALSCHULER, Circuit Judge. Plaintiff in the District Court, Miller Pasteurizing Machine Company, appeals from that part of a decree holding invalid claim 5 of patent No. 878,225, to Miller, and defendant from so much of the decree as holds valid and infringed claims 7, 8, 10, 11, 20, and 21 of patent No. 945,570, to Miller.

[1] The first-named patent is for a pasteurizer, claim 5, which alone is declared upon, being:

"In an apparatus for treating milk and other liquids a metallic heat-conducting wall with which the milk or liquid to be treated is arranged to contact, and a helically grooved wall having rows of perforations through its helically grooved portion and solder connections between said first described heat-conducting wall and said helically grooved wall extending through said perforations in said helically grooved wall."

The claim reads fully and fairly on defendant's structure, and if valid was infringed.

Prior art British patent, No. 10,755, 1892, to Walker, is for an ice cream freezer, and of this feature the patentee in his application says:

"A receptacle preferably of the figure of a deep cylindrical cup formed of thin sheet metal is surrounded by a case also of thin sheet metal, the said case having a spiral groove or a screwlike corrugation extending

from top to bottom, through which groove or corrugation the cold and solidified carbonic acid gas produced by the vaporization of the liquid carbonic acid gas or other liquified gas passes."

Patent No. 655,016, 1900, to Salenius for a refrigerating device, shows a milk or cream cooler of which it is stated in the specification: "The outer shell $b'$ is spirally corrugated to form a spiral passage to which flows the cooling liquid $b^2$. The liquid is admitted at the top and may be drawn off at the bottom." The spiral passage is evidently formed by the corrugated outer shell pressing against an inner shell of plain surface. While it would seem the cooling is there effected by the milk trickling over the outside of the corrugations, the principle involved is the same as in claim 5 above, in that the cooling effect will ensue, whether the material to be cooled contacts from without or within the combined cylinders, since each of them forms in part the tubular passage through which the refrigerant flows.

These do not show the inner and outer shells to be soldered together, but it does not appear that absolutely air or water tight connection between the shells is necessary, or is secured, even by the soldering process of this Miller patent. If, however, closer or firmer union is desired than would come from pressing the one over the other, soldering would be an obvious method whereby this would be effected. But as to the particular method of soldering referred to in the claim there is disclosed in the prior patent art (No. 184,086, 1876 to Kittredge & Clark) a method for strengthening sheet metal by attaching to one side of it a corrugated metal sheet by means of solder through holes in the latter, leaving the opposite surface of the flat sheet wholly unmarred—a result quite essential in the case of the inner surface of the cylinder of an ice cream freezer, but here achieved through a method not new with Miller.

Claim 5 is invalid.

[2] Patent No. 945,570 was issued February 4, 1910, upon application filed October 4, 1904. It is for an ice cream freezer, and shows a power-driven machine of much capacity, for use by large makers. The structure illustrated and described is of a horizontal cylinder for holding the mixture; the cylinder having jacketed upon its outer surface the spirally grooved metal shell as above described, for circulating the cooling fluid about the outer wall of the cylinder to chill its contents. The cylinder has a head at each end; the lower part of one head having a normally closed valve, to be opened for

ejecting the mixture when it is sufficiently frozen. Immediately above the cylinder is shown a tank for receiving a quantity of the mixture sufficient to charge the cylinder anew after its contents have been removed, and a connection between this tank and the cylinder for the passage of the mixture from tank into cylinder. A double shaft passes through the center of the cylinder, and through its heads, and they revolve independently by means of power-driven gearing outside of the cylinder. To one of the shafts are attached beater blades for agitating the mixture, and attached to the ends of the other shaft, just within the heads of the cylinder, are arms or a spider, which holds one or two straight scraper blades, which, when revolved, contact with the inner surface of the cylinder for scraping off the mixture as it freezes, and one or two other rods, spirally disposed, which serve a double function of assisting in the beating of the mixture, and projecting it towards the valved opening, and discharging it from the cylinder when of the proper consistency. Plaintiff calls its machine a batch freezer, in that in the use of it successive batches are placed into the tank, and admitted into the cylinder when its previous contents have passed from it. But the specification states, by leaving open the discharge port, the machine may be adjusted for a continuous inflow of the mixture and discharge of the product, making of it what is known as the "continuous freezer."

Claims 7, 8, 10, 11, 12, 20, and 21 are in suit, and claim 10, which is fairly typical, is:

"In an ice cream freezer, the combination of a freezing cylinder having a discharge opening at the bottom of one end thereof, an adjustable valve for said discharge opening, means for conducting the cooling medium in a circuitous path around said freezing cylinder, an agitating and scraping device arranged within said cylinder comprising a spirally twisted longitudinally disposed beater and ejector blade arranged to operate at all times closely adjacent to the inner wall of said cylinder and to move material toward and feed it through said discharge opening, a series of radially disposed beater blades arranged at the center of said cylinder and separated at their free ends from said outer beater blade, and a scraping blade arranged to scrape material from the said inner wall of the cylinder, and means for actuating said agitating and scraping device."

Practically every element of the combination is old. Prade, No. 756,704 (application June 29, 1903), shows the freezing cylinder

with a discharge opening at the bottom of one end of it, and while no valve is there shown for closing this opening, the employment of a valve for this purpose, in case it were desired to use Prade's machine as a batch freezer, instead of a continuous freezer, would not involve invention. However, the patent to Tenney, No. 751,360 (application August 15, 1902), shows an ice cream freezer with a discharge valve for starting and stopping the outflow of its frozen product.

Prade's freezer shows the means for conducting the cooling medium in a circuitous path around the freezing cylinder. A spirally twisted longitudinally disposed beater and ejector blade, arranged to operate closely to the inner wall of the cylinder and move the material toward the discharge opening, also appears in Prade, wherein it serves also the purpose of a scraper, and, with parallel bars similarly arranged upon a frame, as beater and ejector. Prade does not show a series of radially disposed beater blades at the center of the cylinder, all of the agitating functions being there performed by the frame of parallel spirally disposed bars. But beater blades revolving on a central shaft are very old in this art, being found in most examples as far back as the old White Mountain freezer, which long antedates the patent. This and other freezers also show the scraping blade arranged to scrape from the inner wall of the cylinder the material which freezes there. The element of means for actuating said agitating and scraping device is the power applied to revolve it, found in all ice cream freezers. The Prade structure more closely resembles that of the patent than any other single example. The cylinder is horizontally disposed, and the machine shown purports to be a continuous freezer, although it is not apparent why, with a valve closing the discharge port, it is not as readily adaptable for batch freezing as is Miller's for continuous freezing by leaving his valve open. Plaintiff early acquired exclusive license under this Prade patent, paying royalties thereunder until its expiration.

But from all the evidence it seems to us the combination of all these old elements in the plaintiff's device produced a machine which showed some measure of advance over those in the art which preceded it. We are impressed by the proof of its compactness, its speed and certainty of operation, and the apparently quite unprecedented simplicity, convenience, and ease with which it is operated, quite apart from its marked commercial success, and the persistent simulation of it, rather than of other types clearly open to the public. While there may be some difficulty in pointing out with precision the exact manner wherein any one of the elementary parts functions differently than it did in the combination from which it was taken, the evidence satisfies us there is sufficient of advance in the entire combination to sustain the presumption in favor of the patent grant and forbid the striking down of these claims.

Infringement is denied mainly, if not wholly, upon the contention that the spiral sweeping or ejecting bar of the patent is not present in defendant's structure. True it is, this bar, in the precise form illustrated and described in the patent, is not found in defendant's machine. Instead, there are two broad, straight, metal bars, extending lengthwise of the cylinder, each having cast on its outer surface two spiral blades or vanes, which extend toward the inner surface of the cylinder, and so arranged that in revolving they sweep the entire inner surface, moving the contents toward the discharge port. In its arrangement and function it is the spiral ejecting bar of the patent combination, divided into four longitudinal sections, having the same relation to the cylinder and effect on its contents as Miller's unitary bar. This division of defendant's bar does not, in our judgment, patentably distinguish it from Miller's, and with it defendant has the entire combination of the claims.

[3] It is contended that plaintiff should be held estopped to maintain the action, because of facts which defendant in its brief summarizes substantially thus: In 1913 plaintiff brought suit in the District of Columbia against defendant's customer there for infringement of this patent through the sale of quite similar machines which defendant was then making. That suit pended until February 9, 1920, when it was withdrawn upon the motion of the plaintiff therein. Very shortly after that suit was instituted defendant altered the construction of its machine, with the avowed purpose of avoiding infringement of the patent, and continued thereafter to make the changed machine without any complaint whatever on the part of plaintiff until by the beginning of this suit, April 27, 1920, notwithstanding, as defendant alleges, plaintiff must have known of the structural change. The alleged state of facts does not raise an estoppel against the prosecution of this suit, nor indicate such laches on plaintiff's part as would bar the action. Whether, or to what extent, the facts appearing thereon, and such others as may be adduced, shall affect the accounting to

be taken under the decree, may be determined when that branch of the case is heard. Wolf, Sayer & Heller v. United States Slicing Mach. Co. (C. C. A.) 261 F. 195.

The decree of the District Court is affirmed.