**GEORGE J. MEYER MFG. CO. et al. v. MILLER MFG. CO.**

Circuit Court of Appeals, Seventh Circuit.
February 23, 1928.

No. 3917.

1. Patents ⊚══286—Assignee's rights to enjoin patent infringement are no greater than rights of its predecessors in title.

Rights of assignee of patent to enjoin infringement are no greater than rights of its predecessors in title.

2. Patents ⊚══283(1), 289(2)—Damages may be withheld for "laches" as respects infringements before commencement of suit, notwithstanding injunctive relief, but in case of estoppel all relief should be denied.

There is justification for withholding damages for patent infringements committed before commencement of suit, when laches is established, notwithstanding injunctional relief is granted; but, when holder of patent, in addition to being guilty of laches, has by his conduct estopped himself from asserting his rights under the patent, all relief should be denied, and bill dismissed, "laches" being not mere de-

24 F.(2d)—32½

lay, but delay that works disadvantage to another.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Laches.]

3. Patents ⊚══289(4)—Failure to assert rights under patent for 15 years barred recovery of damages for infringement.

Where neither patentee nor his assignee asserted any rights under patent for 15 years, during which time they had knowledge of the construction and working of defendant's alleged infringing machine, and one of them advertised offer to accept defendant's second-hand machines in part payment of machines manufactured by it, their right to recover for alleged infringement before commencing suit was lost by laches.

4. Patents ⊚══283(1)—Plaintiffs' delay in asserting patent rights, and conduct inducing defendant to extend its business, estopped them from asserting rights.

Where neither patentee nor his assignee asserted any rights under patent for 15 years, during which time they had knowledge of the construction and working of defendant's alleged infringing machine, and by their conduct in withdrawing claim that defendant's machine infringed on a certain other patent caused defendant to enlarge its capital and extend its business, they were estopped to assert right to injunctive relief.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Patent infringement suit by the George J. Meyer Manufacturing Company and others against the Miller Manufacturing Company. Decree for defendant, and plaintiffs appeal. Affirmed.

Russell Wiles, of Chicago, Ill., for appellants.

Clarence E. Mehlhope, of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge. Appellants brought this suit to enjoin infringement of patent No. 839,864, granted January 1, 1907, to C. H. Loew, and covering "Mechanism for Rinsing, Spraying, and Brushing Bottles." The court dismissed the bill for want of equity.

The defenses are invalidity, noninfringement, laches, and estoppel. It will be necessary to consider the last two defenses only.

Loew applied for a patent April 17, 1903. While the application was pending three machines were built and put upon the market. They were all unsatisfactory and soon returned to the factory where they were dismantled. They failed to work "because the rinsing mechanism did not register properly

with the pockets which held the bottles." For the purpose of this argument it may be conceded that this failure to secure proper registration was due to workmanship and could have been overcome. No other machines were ever made in accordance with the teaching of this patent by patentee or the subsequent holders of the patent.

In 1915 appellee began making the alleged infringing machine—a bottle-washing machine known as the Miller "Hydro." The Miller "Hydro" proved a practical success and appellee's business grew steadily. The capital stock, which in 1915 was $20,000, was increased to $80,000 in 1917, and to $100,000 in 1919, and to $300,000 in 1920. The volume of business also steadily and rapidly increased. In 1916 the sales aggregated $47,-519. In 1922 the volume of business was $552,000. The machines sold by appellee were made in accordance with its patent No. 1,881,913.

No claim was ever made by Loew or his successors in title prior to the commencement of this suit, that the Miller "Hydro" infringed the patent in suit. When the Miller "Hydro" first appeared on the market, the Loew Manufacturing Company charged appellee with infringing another patent, one issued to Adams and Rice. But infringement of this patent was disputed by appellee, and ultimately the Loew Manufacturing Company withdrew its claim. The two companies thereafter were in direct competition. Their machines were displayed at the annual conventions attended by manufacturers and merchants from all parts of the United States. There was a keen, but friendly, rivalry between the two companies. Their representatives and officers inspected each other's exhibits and commented favorably or otherwise on the machines displayed. The Loew Manufacturing Company often sold its machine and took in exchange a Miller "Hydro." It rebuilt and resold the Miller "Hydros." Mr. Loew testified:

"I first saw a Miller machine about ten years ago. We have taken probably twelve Miller machines in exchange for ours and have rebuilt them and sold them as second-hand machines. They were all of the same general type as a Miller 'Hydro.' After we decided not to attempt to build any more of these machines, we ceased to think much about the Loew patent, No. 839,864, and never asked our patent attorneys to consider the question as to whether or not this Miller machine infringed this particular Loew patent. I never considered that question myself. When our company wrote the letters

about the Adams and Rice patent, we did not have this particular Loew patent in mind.

"When we examined the Miller machines, from time to time, when they were in our plant for remodeling, we had an idea that Miller patents were pretty close, that is the Miller machine, pretty close to our patents, but I didn't take the trouble to look into it."

Charles H. Loew, the patentee, was the president and general manager of the Loew Manufacturing Company from 1906, when the company was incorporated, down to the date of the trial.

On August 9, 1923, Charles H. Loew executed an assignment of the patent to one John H. Heuser, "including all the accrued rights of actions," and recited in said assignment that he had assigned said patent on May 1, 1915, to the Loew Manufacturing Company, and further that "said assignment has been mislaid or lost and cannot now be found." Thereafter on the 15th of August, 1923, the assignee, John H. Heuser, assigned said patent and all accrued rights of action to appellant George J. Meyer Manufacturing Company. The record also shows an assignment bearing date the ——— day of May, 1922, from the Loew Manufacturing Company to John H. Heuser. There also appears an authorization (August 9, 1923) from the Loew Manufacturing Company to the George J. Meyer Manufacturing Company to join the Loew Manufacturing Company as party plaintiff in this suit. The present suit was begun September 26, 1922.

[1] Appellants' right to the relief sought is clearly no better or greater than the rights of its predecessors in title. Tompkins v. St. Regis Paper Co. (C. C. A.) 236 F. 221.

Assuming for the purpose of this discussion that the George J. Meyer Manufacturing Company is the owner of the patent in suit and entitled to enforce any claim which Loew or the Loew Manufacturing Company possessed, we are at once confronted with the defense of laches.

[2] Appellants' counsel has commendably narrowed the issue by certain concessions. His contention, broadly stated, is that the bill should not have been dismissed, even though all the relief sought was not obtainable; that his clients were entitled at least to injunctive relief and to some damages. In other words, his position is that the laches charged did not bar appellants' recovery, but at most only restricted the relief which the court should grant.

Laches is a term that is often used carelessly and loosely. At times it has been defined in such a way as to eliminate all dis-

tinction between it and estoppel. Again there are decisions and text-book holdings that define it as an unreasonable delay or neglect to do a thing, or to seek to enforce a right at a proper time. It is so frequently presented as a defense in equity suits that it would be impossible to attempt to reconcile all of the opinions dealing with it. As stated in 4 Pomeroy's Equity Jurisprudence, p. 3422, speaking of certain opinions, "It is not impossible that some of the additional elements may have existed to confirm these decisions."

A concise and generally accepted definition meeting with favor is worded thus: "Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another." Chase v. Chase, 20 R. I. 202, 37 A. 804.

This court has attempted consistently to recognize and maintain the essential differences between estoppel and laches, and in dealing with the latter defense has followed Menendez v. Holt, 128 U. S..514, 9 S. Ct. 143, 32 L. Ed. 526 and Maclean v. Fleming, 96 U. S. 245, 24 L. Ed. 828. Wolf Sayer & Heller v. U. S. Slicing Machine Co. (C. C. A.) 261 F. 195; Creamery Package Mfg. Co. v. Miller P. Co. (C. C. A.) 6 F.(2d) 838, 841; Ford Motor Co. v. K. W. Ignition Co. (C. C. A.) 278 F. 378.

In Menendez v. Holt, supra, the court said:

"Mere delay or acquiescence cannot defeat the remedy by injunction in support of the legal right, unless it has been continued so long and under such circumstances as to defeat the right itself. Hence, upon an application to stay waste, relief will not be refused on the ground that, as the defendant had been allowed to cut down half of the trees upon the complainant's land, he had acquired, by that negligence, the right to cut down the remainder, Attorney General v. Eastlake, 11 Hare, 205; nor will the issue of an injunction against the infringement of a trade-mark be denied on the ground that mere procrastination in seeking redress for depredations had deprived the true proprietor of his legal right, Fullwood v. Fullwood, 9 Ch. D. 176. Acquiescence to avail must be such as to create a new right in the defendant. Rodgers v. Nowill, 3 De G., M. & G. 614. Where consent by the owner to the use of his trade-mark by another is to be inferred from his knowledge and silence merely, 'it lasts no longer than the silence from which it springs; it is, in reality, no more than a revocable license.' * * *

"So far as the act complained of is completed, acquiescence may defeat the remedy on the principle applicable when action is taken on the strength of encouragement to do it, but so far as the act is in progress and lies in the future, the right to the intervention of equity is not generally lost by previous delay, in respect to which the elements of an estoppel could rarely arise. At the same time, as it is in the exercise of discretionary jurisdiction that the doctrine of reasonable diligence is applied, and those who seek equity must do it, a court might hesitate as to the measure of relief, where the use, by others, for a long period, under assumed permission of the owner, had largely enhanced the reputation of a particular brand."

There are peculiar and special reasons why the holder of a patent should not be barred from enforcing his right under the patent because of his failure to promptly sue infringers. Frequently the position of the patentee (financial and otherwise) prevents the institution of suits. The patent litigation is often prolonged and expensive. Moreover from the very nature of the thing he cannot be fully cognizant of all infringements that occur throughout the length and breadth of this country. His information may be largely hearsay. Then, also, the validity of his patent and the infringement thereof may be, as here, disputed. These defenses present mixed questions of fact and law concerning which there is necessarily some doubt and uncertainty. In many cases, if not in most cases, the doubts are serious ones. For an infringer naturally avoids making a Chinese copy of the patent. In a doubtful case the commercial success of the patented art is at times determinative of the issue of validity. This factor cannot be shown save as time establishes it. Moreover, common experience proves that inventions which appear to be revolutionary are often not accepted by the public and never become a commercial success. A patentee is therefore justified in waiting to ascertain whether realizations equal expectations.

We think, therefore, that there is justification in patent suits for withholding damages for infringements committed prior to the commencement of the suit when laches is established, notwithstanding injunctional relief be granted. But, when it can be shown that the holder of the patent in addition to being guilty of laches has, by his conduct, estopped himself from asserting his rights under the patent, all relief should be denied and the bill dismissed.

[3] The facts in the present case we think establish both laches and estoppel.

Laches.—The 15 years that elapsed be-

tween the date of the issuance of the patent and the commencement of the suit, during which time neither patentee nor his assignee asserted rights under the patent, is so great as to cast upon the appellants the duty of explaining their nonaction. This they did not attempt to do. That they had full knowledge of appellee's doings, of the construction and working of its machine, that their officers discussed the merits of the infringing machine with the representatives of the appellee, is conclusively established by the evidence. Likewise it is equally clear that no claim of infringement of the patent in suit was ever advanced. Moreover, the Loew Manufacturing Company, while it held the patent, offered to accept appellee's secondhand machines in part payment of new machines manufactured by it. It advertised that it would take them in part payment of one of its own machines. These facts established laches on appellants' part that now defeats the recovery of damages for infringements committed before the commencement of this suit. 4 Pomeroy, Equity Jurisprudence, 3428.

[4] Estoppel.—But are they barred from injunctional relief or for recovering damages subsequent to the commencement of the suit? If so, it must be because the patent right itself was extinguished. Menendez v. Holt, supra. Extinguishment of the patent right must be because appellants are estopped under the evidence to assert their rights.

Upon a full consideration of all the evidence, we conclude that such is appellants' position. They not only knowingly sat by while appellee built up its large business in bottle washing machines, but, by their conduct, they encouraged the belief that such business would be unmolested. When the Loew Manufacturing Company charged appellee with infringing its Adams & Rice patent and then withdrew its claim, appellee had justification for enlarging its capital and extending its business.

These facts, clearly established by the proof, make out a case of estoppel against appellants.

Appellants had full knowledge of appellee's infringements. They were under no handicap or disability—financial or otherwise —which prevented them from asserting and vindicating their rights under the patent. They had full opportunity to protest. They spoke, but voiced no protest against appellee's alleged infringement of this patent. Relying upon appellants' withdrawal of their charge of infringement of the Adams and Rice patent, appellee expended large sums of money in enlarging its plant.

The decree is affirmed.