CONTINENTAL COATINGS CORPORA-
TION, Plaintiff-Appellant,

v.

METCO, INC., et al., Defendants-
Appellees.

No. 71–1266.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 16, 1972.

Decided July 21, 1972.

Alvin D. Shulman, William A. Marshall, Chicago, Ill., for plaintiff-appellant; Merriam, Marshall, Shapiro & Klose, Chicago, Ill., of counsel.

Walther E. Wyss, Chicago, Ill., Arnold Sprung, New York City, for appellees; Nathaniel D. Kramer, Burgess, Dinklage & Sprung, New York City, Mason, Kolehmainen, Rathburn & Wyss, Chicago, Ill., of counsel.

Before DUFFY, Senior Circuit Judge, STEVENS, Circuit Judge, and GRANT,* District Judge.

STEVENS, Circuit Judge.

Plaintiff appeals from the entry of a summary judgment sustaining the defense of laches in a patent infringement action. Plaintiff contends (1) that its delay in filing suit was excusable, or at least the issue was sufficiently disputed to preclude a summary judgment; and (2) that, in any event, laches should not foreclose injunctive relief or the recovery of damages subsequent to the filing of the complaint. The district court, 325 F.Supp. 165, relied heavily on our recent decision in Baker Mfg. Co. v. Whitewater Mfg. Co., 430 F.2d 1008 (1970), cert. denied, 401 U.S. 956, 91 S. Ct. 978, 28 L.Ed.2d 240. We also believe that *Baker* is controlling and that it requires affirmance.

Plaintiff is the owner of a patent on a method for flame spraying refractory oxide powders. The patent was issued to the Armour Research Foundation of Illinois Institute of Technology (IIT) on September 15, 1959. IIT originally granted plaintiff an exclusive license and in 1968 assigned the patent to plaintiff; this suit was filed on July 17, 1968.

The principal defendant is Metco, Inc., a supplier of refractory oxide powders and equipment for flame spraying. Metco is sued as a contributory infringer. Its customers perform flame spraying operations which allegedly infringe the patent in suit. Two of those customers are named as defendants. Metco has indemnified them, as well as its other customers, against liability for infringement.

Before the patent issued, IIT had demonstrated the invention for Metco and had given Metco a copy of the patent application. In April of 1956, Metco had expressed doubt as to "how good these claims will be"; a month later it began selling refractory oxide powders for flame spraying. While the application was pending, IIT tried, but failed, to persuade Metco to become a licensee.

Shortly after the patent issued, Metco reviewed the claims and concluded that the use of its product would not infringe unless the claims were given such a broad construction as to be invalid.[1] At all times thereafter Metco consistently adhered to this position.

On November 17, 1960, IIT sent infringement notices to two of Metco's customers. Both were advised that IIT intended "to enforce its rights vigorously" and that a sublicense from the plaintiff might be obtained. The alleged infringers responded by advising that the matter had been referred to Metco. Metco then agreed to hold those custom-

---

* Chief District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

1. "I recommend that we take no action with regard to this patent. It appears to me that we do not infringe this patent unless they choose to interpret the claims broadly enough to include the prior art in which case they would be invalid." Excerpt from December 10, 1959, memorandum, PX–86.

ers harmless and expressly so advised IIT. A series of conferences between counsel for IIT and counsel for Metco ensued. IIT unsuccessfully tried to persuade Metco to accept a license. Metco unequivocally and repeatedly advised IIT that it considered the patent invalid and that it would continue to indemnify customers threatened with suit.

Although the respective positions of the parties had crystallized in 1961, from time to time thereafter IIT renewed its efforts to persuade Metco to accept a license. Metco's position remained uncompromising.[2] In 1964, IIT sent notices of infringement to 412 companies, including some customers of Metco. About 100 replies were received; none indicated any interest in a license; some "companies like Caterpillar Tractor" indicated "we buy stuff from Metco, have been held harmless by them and we don't need a license."[3]

Except for a telephone call on July 23, 1965, initiated by IIT to determine if Metco might "pay some very small amount for these patents and then dedicate them to the public simply to clear the air,"[4] IIT took no further action. After assignment of the patent to plaintiff, this litigation was commenced on July 18, 1968.

The litigation was thus started 13 years after the invention was disclosed to Metco, 12 years after Metco began selling the oxide powder for flame spraying, almost 9 years after the patent issued, over 7 years after notice of infringement had been sent and unequivocally rejected by Metco, and almost exactly 3 years after the last contact between the parties. During those years Metco's sales of oxide materials for flame spraying increased dramatically.[5]

I.

■ Certain propositions are not disputed. As an assignee of IIT, plaintiff must accept the consequences of IIT's dilatory conduct;[6] moreover, as an exclusive licensee, it had the right to sue or to require IIT to do so.[7] IIT was continuously aware of Metco's conduct which was ultimately challenged. The delay, whether measured from the date the patent issued or from the date the infringement notices were first sent, was unreasonable.

■ Plaintiff contends, however, that it offered sufficient evidence to preclude a finding that the delay was inexcusable. The excuse which it puts forward is that IIT was trying to settle the dispute by offering licenses to Metco and its customers. The latest meaningful bilateral discussion took place in 1961; IIT's unilateral overtures in 1964 and 1965 could not excuse its continuing inaction. Although the alleged infringement was much more widespread in 1964 than in 1961, IIT nevertheless supinely acquiesced in even more disdainful rejection of its infringement notices for another three-year period. In view of that

---

2. An IIT memorandum dated February 8, 1961, commenting on discussions with Metco, stated, in part:

"Metco strongly feels that our patent is invalid, but it should be noted that on the basis of substantially the same prior art as is now available and which was available to the examiner, it was their position four or five years ago that the patent would never issue. Admittedly, they are somewhat nervous about this." DX–VIII.

3. DX–II.

4. The quotation is from a contemporaneous Metco memorandum (PX–107), and therefore may be somewhat biased, but plaintiff does not dispute its essential accuracy.

5. For example, in 1959, Metco sold 13,901 pounds; in 1963, 26,405; in 1966, 86,323.

6. George J. Meyer Mfg. Co. v. Miller Mfg. Co., 24 F.2d 505, 506 (7th Cir. 1928); Rome Grader & Machinery Corp. v. J. D. Adams Mfg. Co., 135 F.2d 617, 619–620 (7th Cir. 1943); Skinner v. Aluminum Co. of America, 105 F.Supp. 635, 637 (W.D.Pa.1952).

7. IIT had a contractual obligation to plaintiff to sue infringers. See DX–II and DX–XIX. As to an exclusive licensee's rights apart from an express contractual provision, see Independent Wireless Co. v. Radio Corp. of America, 269 U.S. 459, 469–473, 46 S.Ct. 166, 70 L.Ed. 357.

inaction from 1965 to 1968, IIT's empty threats in 1964 actually aggravate rather than mitigate the unreasonable character of its delay subsequent to 1961 when the parties' adverse positions had crystallized. We are satisfied that the district court correctly concluded that the evidence, construed most liberally in plaintiff's favor, was insufficient to excuse the delay. Accordingly, with due regard for the limitations on the appropriate use of summary judgment which plaintiff has thoroughly argued, we conclude that the delay was both unreasonable and unexcused as a matter of law.

■■■ Plaintiff argues that Metco was not damaged by IIT's delay and that, in any event, it relied on an opinion of invalidity rather than on IIT's inaction as its business expanded. In *Baker*, however, we held that an infringer is presumed to have been damaged by a patentee's unreasonable and unexcused delay.[8] As the authorities reviewed in Judge Major's opinion clearly hold, an expansion of the infringer's business is the kind of change of position which will support the defense of laches. It is no doubt true that Metco's decision in 1961 to risk litigation rather than to discontinue production was predicated on its opinion that the patent was invalid; but the growth in Metco's business in the ensuing several years was permitted to continue without challenge by IIT or plaintiff. Under the holding of *Baker*, the presumption of damage is applicable.[9]

Even though we agree with plaintiff that it is somewhat unusual for the defense of laches, which depends largely on the chancellor's discretion, to be sus-

8. "While there is some contrariety of views among the courts on these issues, we are convinced that by the great weight of authority, including the decisions of this court, the burden is on the patentee to excuse an unreasonable delay. We also think, even though the authority is less compelling, that under such circumstances there is a presumption that an alleged infringer has been damaged." 430 F.2d at 1009.

9. The presumption is not without foundation. When a patentee makes a threat of "vigorous enforcement" which is met with unequivocal resistance by the alleged infringer and follows this with mere sporadic offers of a license over a seven year period, the alleged infringer could, not unreasonably, conclude that the patentee had acquiesced in the alleged infringer's assessment of invalidity and was merely making half-hearted offers of a license in the hope that it might make a little money without much expense. If the patentee makes a stronger enforcement effort, the alleged infringer might reexamine its own conclusions and might not continue a course of action based on its initial conclusion. This court has previously recognized that an initial conclusion is likely to be reinformed and not reexamined if the patentee unreasonably delays action. In Rome Grader & Machinery Corp. v. J. D. Adams Co., 135 F.2d 617, 620 (7th Cir. 1943), Judge Lindley wrote:

"As excuse for its failure to act after notice by plaintiff to defendant in 1936, plaintiff contends that defendant's reply that it was not infringing reflected a deliberate intention to infringe and that, due to the necessity of organizing the activities of the new corporation and carrying on its business, plaintiff was unable to follow up the matter until 1939. This to us is painfully illogical and inadequate. Rather it was entirely reasonable for defendant to conclude that, following its reply to plaintiff's 1936 letter, plaintiff had become convinced, as had Revere, that it had no valid claim. To approve plaintiff's plea that it did not have time to protect its rights while defendant expended large sums of money under the reasonable assumption that there was no infringement does not appeal to us as equitable."

In Universal Coin Lock Co. v. American Sanitary Lock Co., 104 F.2d 781, 783 (1939), we quoted with approval from a Third Circuit case that "because of delay, the defendant has good reason to think that plaintiff believes his asserted rights to be worthless. . . . [Defendant] could well assume that plaintiff's counsel had reached the same conclusion as its own."

To the extent that plaintiff has offered evidence to rebut the presumption of damage, we take the evidence as undisputed and conclude that it nevertheless is insufficient as a matter of law to raise a genuine issue of material fact such as to require a trial on the issue of rebuttal of the presumption.

tained by summary judgment, we are satisfied that the district court correctly appraised the undisputed facts as requiring a finding of laches in this case.

## II.

Plaintiff contends that there is a clear distinction between laches and estoppel. By reason of laches, plaintiff may have lost the right to recover damages for past infringement, but unless defendant can establish an estoppel, plaintiff argues that its right to equitable relief or to damages for future infringement should survive. Furthermore, plaintiff argues that *Baker* merely considered the laches defense and did not reach the question of estoppel.

Although the distinction is sometimes overlooked or obscured, there

is indeed an important difference between laches and estoppel. That difference is plainly identified in this court's opinion in George J. Meyer Mfg. Co. v. Miller Mfg. Co., 24 F.2d 505 (1928).[10] In that case the court held that the defense of estoppel, as well as laches, was available:

"They not only knowingly sat by while appellee built up its large business in bottle washing machines, but, by their conduct, they encouraged the belief that such business would be unmolested. When the Loew Manufacturing Company charged appellee with infringing its Adams & Rice patent and then withdrew its claim, appellee had justification for enlarging its capital and extending its business.[11]

10. "This court has attemped consistently to recognize and maintain the essential differences between estoppel and laches, and in dealing with the latter defense has followed Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526 and MacLean v. Fleming, 96 U.S. 245, 24 L.Ed. 828.

\*     \*     \*     \*     \*

"There are peculiar and special reasons why the holder of a patent should not be barred from enforcing his right under the patent because of his failure to promptly sue infringers. Frequently the position of the patentee (financial and otherwise) prevents the institution of suits. The patent litigation is often prolonged and expensive. Moreover from the very nature of the thing he cannot be fully cognizant of all infringements that occur throughout the length and breadth of this country. His information may be largely hearsay. Then, also, the validity, of his patent and the infringement thereof may be, as here, disputed. These defenses present mixed questions of fact and law concerning which there is necessarily some doubt and uncertainty. In many cases, if not in most cases, the doubts are serious ones. For an infringer naturally avoids making a Chinese copy of the patent. In a doubtful case the commercial success of the patented art is at times determinative of the issue of validity. This factor cannot be shown save as time establishes it. Moreover, common experience proves that inventions which appear to be revolutionary

are often not accepted by the public and never become a commercial success. A patentee is therefore justified in waiting to ascertain whether realizations equal expectations.

"We think, therefore, that there is justification in patent suits for withholding damages for infringements committed prior to the commencement of the suit when laches is established, notwithstanding injunctional relief be granted. But, when it can be shown that the holder of the patent in addition to being guilty of laches has, by his conduct, estopped himself from asserting his rights under the patent, all relief should be denied and the bill dismissed.

"The facts in the present case we think establish both laches and estoppel." 24 F.2d at 507.

11. *Id.* at 508.

The court continued:

"These facts, clearly established by the proof, make out a case of estoppel against appellants.

"Appellants had full knowledge of appellee's infringements. They were under no handicap or disability—financial or otherwise—which prevented them from asserting and vindicating their rights under the patent. They had full opportunity to protest. They spoke, but voiced no protest against appellee's alleged infringement of this patent. Relying upon appellants' withdrawal of their charge of infringement of the Adams and Rice patent, appellee expended large sums of money in enlarging its plant." *Id.*

In later cases this circuit has consistently denied the patentee any relief if the evidence of unreasonable and unexcused delay also disclosed that the patentee's conduct had encouraged the belief that the infringer's business would be unmolested.[12] In each such case the infringement notice was either withdrawn or followed by such a long period of inactivity as to justify an inference of abandonment. In some instances the court failed expressly to mention the term estoppel, but in each case all relief was denied the patentee.

*Baker* followed that line of cases. The *Baker* opinion does not, in words, discuss estoppel, but the judgment directed that the entire suit be dismissed. Moreover, in that case the patentee had given the defendant an early notice of infringement which was never withdrawn. The court held:

> "The fact that Baker did not suggest that it was abandoning its claim of infringement is irrelevant. The important fact is that at no time did it notify Whitewater in any manner that it was pressing its claim." 430 F.2d at 1013.

It should also be noted that in *Baker* the court reversed the trial court's rejection of the defense after hearing the evidence. Thus, there is a marked parallel between the district court's entry of summary judgment here and this court's disposition of *Baker*. We conclude that there is a sufficient similarity between *Baker* and this case to require affirmance of the judgment.

■ Since we are implicitly accepting an estoppel defense which was advanced under the laches label, it is appropriate to identify explicitly the fact we consider critical. That fact is the infringement notice threatening prompt and vigorous enforcement of the patent, which was then followed by a period of unreasonable and unexcused delay. Having made such a threat, the patentee was thereafter estopped to deny that it was then ready, willing and able to establish the validity of the patent in court if necessary. A comparable fact was present in each of the cases in which this court has implicitly or explicitly sustained an estoppel defense.

The judgment is affirmed.