**NAXON TELESIGN CORPORATION, Plaintiff-Appellant,**

v.

**BUNKER RAMO CORPORATION, Stewart-Warner Corporation, and Merrill Lynch, Pierce, Fenner and Smith, Inc., Defendants-Appellees.**

No. 81–1710.

United States Court of Appeals, Seventh Circuit.

Argued April 9, 1982.

Decided Aug. 24, 1982.

Rehearing and Rehearing In Banc Denied Oct. 14, 1982.

W. Melville Van Sciver, Chicago, Ill., for plaintiff-appellant.

Theodore R. Scott, McDougall, Hersh & Scott, Chicago, Ill., for defendants-appellees.

Before PELL, WOOD and CUDAHY, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiff, Naxon Telesign Corporation ("Naxon"), filed a two-count complaint

charging patent infringement and antitrust violations and moved for leave to amend its antitrust count to allege fraudulent concealment. Defendants, Stewart-Warner Corporation ("Stewart-Warner"), Bunker Ramo Corporation ("Bunker Ramo"), and Merrill Lynch, Pierce, Fenner and Smith, Inc. ("Merrill Lynch") opposed the motion to amend and moved for summary judgment on both counts. The United States District Court for the Northern District of Illinois granted the motion for leave to amend; granted defendants' motion for summary judgment on the patent infringement count as to each defendant;[1] and granted defendants' motion for summary judgment on the antitrust count. 517 F.Supp. 804 (N.D.Ill. 1981). Naxon appeals from the summary judgments in favor of defendants. We affirm the district court's ultimate decision, but do so for reasons sometimes different than those expressed by the district court.

### I. Facts

United States Letters Patent No. 3,218,824 were issued to Irving Naxon on October 25, 1966 and subsequently assigned to plaintiff Naxon. Naxon has never marketed a product embodying its patent (the "Naxon Patent"), but asserts that it has built several prototypes and continues to be interested in using the patent commercially. Naxon's infringement claim charges that a solid state traveling message sign developed by Stewart-Warner and marketed by Bunker Ramo infringes the Naxon Patent.

On December 11, 1967 Stewart-Warner and Bunker Ramo entered into an agreement covering the Stewart-Warner product, which was not then the subject of a patent. Stewart-Warner agreed to sell a large quantity of its electronic illuminated traveling message devices to Bunker Ramo and contemporaneously granted an exclusive royalty-free world-wide license to use, lease, and sell the devices in the "Financial Community."[2] Under Paragraph 24 of the agreement, the exclusive nature of the license was to terminate in 66 months (on June 11, 1973). The agreement was the subject of a news release, issued two days after the agreement was executed, and the subject of articles which appeared in *Electronic News, The Chicago American,* and *The Wall Street Journal.*

From the parties' submissions on the summary judgment motion, it appeared that Stewart-Warner last manufactured equipment under the Bunker Ramo purchase agreement in the first quarter of 1970 and did not thereafter manufacture or offer for sale the same type of equipment to any other company, nor did it advertise or promote the sale of the traveling message signs. Upon Naxon's motion for reconsideration, however, the district court found that, although Stewart-Warner had not manufactured any allegedly infringing signs during the statutory recovery period, it had made sales of three such signs.[3] As for Bunker Ramo, Naxon's memorandum in opposition to summary judgment states that its leasing of the displays (for example, to brokerage offices like that of Merrill Lynch) has continued at least through the time suit was brought. Naxon's memorandum also reflects that leases from Bunker Ramo to lessees like Merrill Lynch are for two years, automatically renewable for successive one-year periods unless terminated.

---

**1.** In its opinion and order, the district court limited summary judgment in favor of Stewart-Warner to Stewart-Warner's non-liability for past damages.

**2.** That term was defined as "all applications of information display pertaining to the dissemination of prices, volume, trends, ranges, earnings data, averages, dividend data, and other statistical data emanating from stock and commodity exchanges on securities, commodities, bonds, and futures, and in addition, shall include information from financial news services."

**3.** The court therefore concluded that summary judgment in favor of Stewart-Warner on the patent cause of action was precluded because of these sales. That question was, however, rendered moot by an agreement which the parties entered into. The agreement compromised their differences with respect to the three signs in question, and a judgment dismissing both Naxon's patent and antitrust causes of action as to all defendants was entered on April 8, 1981, from which Naxon filed this appeal.

The district court found that Naxon became aware of the possible infringement in 1970 after Stewart-Warner had obtained a patent (the "Andrews Patent") on its device. Irving Naxon (himself a patent attorney) stated that he conferred with Naxon's patent counsel in 1970 and that they *then* agreed that the Stewart-Warner device infringed Claims 12 and 13 of the Naxon Patent. It was not, however, until May 1973 that Naxon first sent notices of claimed infringement to Stewart-Warner and Bunker Ramo. Within three months and after some exchange of correspondence, Stewart-Warner sent a "final letter" rejecting Naxon's infringement claims "firmly and irrevocably." On September 12, 1973 Naxon replied:

> Answering all of your letters, including your "final reply" of August 27, it would appear to anyone who knows patent law that you do not know what you are talking about!
>
> While we are arranging with Patent Counsel for litigation against your company and The Bunker-Ramo Corporation, we are also, as required by law, going to put on notice other known users, installers, maintenance and repair people associated with your equipment, warning them regarding contributory infringement and any and all of their own separate liabilities under the law.

There was no further communication from Naxon to any of the defendants until this action was filed in the district court in July 1978, approximately eight years after Naxon became aware of the possible infringement and just under five years after Naxon's September 1973 letter.

## II. The District Court Decision

The district court first noted that both parties characterized "defendants' principal patent infringement defense as one of laches rather than estoppel." 517 F.Supp. at 807. The court recognized that the distinction between the two defenses is crucial because of the legal consequences of each. "In a patent suit, the effect of laches is

merely to withhold damages for infringement prior to the filing of the suit. Estoppel, however, forecloses the patentee from enforcing his patent, and the infringement suit must fail *in toto*." *Id., quoting Advanced Hydraulics, Inc. v. Otis Elevator Co.*, 525 F.2d 477, 479 (7th Cir.), *cert. denied*, 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 99 (1975). *See also Continental Coatings Corp. v. Metco, Inc.*, 464 F.2d 1375, 1379 (7th Cir. 1972).

Although it is difficult to say with certainty, the district court appears to have then addressed the defense of estoppel alone. It noted that "[a]s a matter of law, the relevant period of delay (unless excused) [ran] from the time Naxon knew of the claimed infringement (1970, according to Irving Naxon's own testimony) to the institution of litigation in 1978." 517 F.Supp. at 809. Within this time period, it appears that the district court required Naxon, in order to prevail, to justify the period of delay [4] and to disprove presumed prejudice to the defendants.

The district court found that Naxon's justifications did not excuse the delay. Naxon argued that the delay was justified because of Irving Naxon's effort to find an attorney willing to handle the matter on a contingent fee basis, although Naxon acknowledged that the company could have afforded to hire the most expensive trial lawyer in Chicago to represent it in the litigation. The lack of funds, however, is no excuse for delay in bringing suit. *Baker Manufacturing Co. v. Whitewater Manufacturing Co.*, 430 F.2d 1008, 1010 (7th Cir. 1970); *Whitman v. Walt Disney Productions, Inc.*, 148 F.Supp. 37, 39–40 (S.D.Cal. 1957), *aff'd*, 263 F.2d 229, 231 (9th Cir. 1958). The district court noted that in *Baker*, 430 F.2d at 1014, the plaintiff, like Naxon here, made no claim that it lacked the means to finance litigation. The district court found that Naxon's asserted excuse created the equivalent of an unexplained, as well as unjustified delay. Moreover, Naxon asserted as claimed justification for the delay that Mrs. Naxon was ill from 1970–71 and that Irving Naxon was, in addition to running the Naxon business, president of

---

4. This would be required in a laches or estoppel defense.

Naxon Utilities Corporation and Naxon Building Corp. The district court found that neither reason carried any weight and properly held that there was no genuine issue as to any material fact.

The district court also addressed the issue of prejudice to the defendants from the delay. The court recognized that there is no statute of limitations as such barring suits for patent infringement, but that 35 U.S.C. § 286 bars recovery of damages for infringement that occurred more than six years before suit is filed. The district court noted that by analogy, a number of patent cases have used the fact that a plaintiff has delayed for six years as the basis for presuming that the delay has injured the defendant. The district court pointed out, however, that other decisions had found unreasonable delay as a matter of law based on lesser periods "during which plaintiffs had left defendants waiting for the other shoe to drop." 517 F.Supp. at 808.

In this case, the district court noted that more than six years had elapsed. It then applied the presumption that "the delay injured the defendant—that the necessary element of prejudice has been established." 517 F.Supp. at 808. It also "added [the] presumption that the delay itself was unreasonable." *Id.* Although the court presumed damage, it looked further to determine whether the presumption of damage could be rebutted.

Based on the evidence that Stewart-Warner ceased its manufacture in 1970 and the lack of other factors that would demonstrate any damage to Stewart-Warner, the district court initially found that the presumption of prejudice from Naxon's delay was rebutted. Therefore, the court noted that summary judgment on estoppel grounds would be inappropriate. But since Stewart-Warner had not made, used, or sold any allegedly infringing devices after 1970, the district court found that no infringement by Stewart-Warner could have occurred by definition during the six-year period immediately preceding this action.

Therefore, the district court granted summary judgment in favor of Stewart-Warner, but limited its judgment to non-liability for past damages.

As to Bunker Ramo, the district court found that the evidence was "totally consistent with the presumption of prejudice." The court noted "that during the long interval of silence after Naxon's threatened enforcement action Bunker Ramo continued its leasing operations using the allegedly infringing machines." Moreover, the court found "[e]qually important, [the fact that] Naxon has offered not a shred of evidence to meet its burden of overcoming the presumption." Therefore, the district court held "that no material fact issue bars summary judgment in favor of Bunker Ramo on estoppel grounds." 517 F.Supp. at 809.

Finally, with respect to Merrill Lynch, the district court found that the lease terms, allowing periodic renewals, would indicate prejudice. Further, as was the case with Bunker Ramo, the court noted the same absence of any factors which would negate prejudice and thus keep the presumption operative. Therefore, the court granted summary judgment in favor of Merrill Lynch.

### III. The Burden of Proof

The district court properly noted that "the fact that we are dealing with a summary judgment motion makes the allocation of the burden of proof an important consideration." 517 F.Supp. at 808. The court also recognized that the distinction between laches and estoppel is crucial because of the type of relief each affords. A further distinction between the two defenses, which must be recognized, relates to the burden of proving prejudice [5] to the defendant.

The only statute of limitations involving patent infringement suits limits the period of recovery of damages to six years, not a patentee's right to maintain an action.[6] 35 U.S.C. § 286 (1976). Courts, guided by the principle that "laches is an equitable doctrine 'not fixed by an unyield-

**5.** Some courts require proof of "damage" to the defendant; others refer to "prejudice" due to delay. We have adopted the latter terminology.

**6.** Congress has provided that "every patent

ing measure, but to be determined in each case under its factual situation,'" *Advanced Hydraulics*, 525 F.2d at 479, use the six-year statutory period for damages as a frame of reference for the application of the doctrine of laches. *Maloney-Crawford Tank Corp. v. Rocky Mountain Natural Gas Co.*, 494 F.2d 401, 403–04 (10th Cir. 1974); *General Electric Co. v. Sciaky Bros., Inc.*, 304 F.2d 724, 727 (6th Cir. 1962); *Whitman*, 263 F.2d at 231. This is consistent with traditional equity practice which considers the passage of time equivalent to a comparable statute of limitations as presumptive of laches. Note, *Developments in the Law—Statutes of Limitations*, 63 Harv.L.Rev. 1177, 1184 (1950). Thus, the courts have held that the lapse of six years from the time the patentee has either actual or constructive knowledge of the alleged infringement, *Studiengesellschaft Kohle mbH v. Eastman*

*Kodak Co.*, 616 F.2d 1315, 1326 (5th Cir. 1980); *General Electric Co. v. Sciaky Bros., Inc.*, 304 F.2d 724 (6th Cir. 1964); *Potash Co. of America v. Int'l Minerals & Chemical Corp.*, 213 F.2d 153 (10th Cir. 1954), creates the presumption that the delay is unreasonable and shifts the burden to the plaintiff who then must excuse the delay.[7] *Technitrol, Inc. v. Memorex Corp.*, 376 F.Supp. 828 (N.D.Ill.1974), *aff'd per curiam*, 513 F.2d 1130 (7th Cir. 1975); *Continental Coatings*, 464 F.2d 1375; *Baker*, 430 F.2d 1008; *Dymo Industries, Inc. v. Monarch Marking Systems*, 474 F.Supp. 412 (N.D.Tex.1979).

■ In contrast to the defense of laches, and contrary to what the district appears to have done in this case, a defendant who raises the defense of estoppel cannot automatically shift its burden of demonstrating prejudice to the plaintiff based on the passage of a set period of time.[8] *Jensen v.*

---

**7.** The plaintiff will be barred from seeking past damages by laches unless it can (1) rebut the presumption of prejudice; *see, e.g., Maloney-Crawford Tank Corp. v. Rocky Mountain Natural Gas*, 494 F.2d 401, 404 (10th Cir. 1974); (2) rebut the presumption of unreasonable delay by showing a good excuse for the delay; *see, e.g., American Home Prod. Corp. v. Lockwood Mfg. Co.*, 483 F.2d 1120, 1122–24 (6th Cir. 1973); *cert. denied*, 414 U.S. 1158, 94 S.Ct. 917, 39 L.Ed.2d 110 (1974); or (3) show that the infringer has engaged in particularly egregious conduct which would change the equities significantly in plaintiff's favor; *see, e.g., Baker v. Simmons Co.*, 307 F.2d 458, 466 n.4 (1st Cir. 1962).

**8.** Some courts have held that, in patent cases raising the estoppel defense, the burden shifts after an unreasonable period of delay. It appears that many of these same courts also find that a passage of six years is unreasonable as a

"shall contain ... a grant to the patentee ... for the term of seventeen years ... of the right to exclude others from making, using, or selling the invention." 35 U.S.C. § 154 (1976). During this time, "a patentee shall have remedy in civil action for infringement." *Id.* § 281. Courts may enforce patent rights by granting "injunctions in accordance with the principles of equity ... on such terms as the court deems reasonable," and by awarding "damages adequate to compensate for the infringement." *Id.* §§ 283, 284. The statute of limitations, however, provides that "no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint.... *Id.* § 286.

matter of law. Assuming *arguendo* that these courts are correct, the six-year period would begin to run from the time the plaintiff did the act which the defendant relied on, or failed to act or speak when the plaintiff should have. The time period differs from laches (and from what the district court indicated) because the essence of estoppel "is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted." *Dickerson v. Colgrove*, 100 U.S. 578, 580, 25 L.Ed. 618 (1879); *see Advanced Hydraulics*, 525 F.2d at 481 (exchange of correspondence between plaintiff and defendants is critical element as far as plea of estoppel is concerned).

Other courts have found unreasonable delay as a matter of law based on lesser periods. In *Advanced Hydraulics*, the comparable gap was five years. The court, however, did not appear to presume damage from the delay. In *Continental Coatings*, the period of continuous delay from notice was three years. While the court appeared to presume prejudice, it relied on *Baker*, a laches case, to do so. Finally, in *Kimberly Corp. v. Hartley Pen Co.*, 237 F.2d 294 (9th Cir. 1956), the period of delay was four years, but the court addressed a laches defense.

In this case, it is difficult to say with certainty whether the district court found that the period of delay from time of notice to time of suit was unreasonable as a matter of law. On one hand, the district court evaluated the claimed justification for the delay, finding that "Naxon's asserted excuse creates the equivalent of an unexplained *as well as an unjustified delay*, and the court so rules as a *matter of*

*Western Irrigation & Manufacturing, Inc.*, 650 F.2d 165, 169 (9th Cir. 1980) (defendant must show it actually relied on misleading conduct to his detriment); *TWM Manufacturing Co. v. Dura Corp.*, 592 F.2d 346, 350 (6th Cir. 1979) (defendant must show it was misled in some fashion by plaintiff); *Dymo Industries, Inc. v. Monarch Marking Systems*, 474 F.Supp. 412, 417 (N.D.Tex.1979) (defendant who raises estoppel cannot shift burden of persuasion); G. Rose, 1980–81 *Patent Law Handbook*, § 4.2 (1981). Few courts have addressed this aspect of the estoppel defense, and the treatment of the subject is both varied and confusing.[9] Nonetheless, there are several reasons which lead us to believe that the defendant carries the burden to prove that it was prejudiced by plaintiff's delay.

■ First, the consequence of a finding of estoppel completely bars a plaintiff from asserting its rights. Moreover, the nature of estoppel is based on a misleading act of the plaintiff and detrimental reliance by the defendant.[10] *Advanced Hydraulics*, 525 F.2d at 479; *cf. Saverslak v. Davis-Cleaves Produce Co.*, 606 F.2d 208, 219 (7th Cir. 1979) (estoppel focuses on effect of actor's conduct on defendant). Therefore, in light of the severity of the result of a finding of estoppel, a court should not lightly presume injury to the party raising the defense. *Dymo Industries*, 474 F.2d at 416.

Secondly, many of the cases which the defendants and the district court relied on regarding the shifting of the burden of proof are either cases dealing with laches [11] or cases which found estoppel, but did not shift the burden in doing so. While there is broad language in those cases which arguably could be applied in the estoppel context, it is better to limit such decisions to the facts presented in each case. *See, e.g., Studiengesellschaft Kohle*, 616 F.2d at 1325 (laches and estoppel are equitable defenses, the appropriateness of which must be determined in each case under its particular factual situation).

For example, in *Baker*, the court broadly stated, "the burden is on the patentee to excuse an unreasonable delay" and "there is a presumption that an alleged infringer has been damaged." 430 F.2d at 1009. The court cited *Gillons v. Shell Co. of Calif.*, 86 F.2d 600, 601 (9th Cir.), *cert. denied*, 302 U.S. 689, 58 S.Ct. 9, 82 L.Ed. 532 (1937), "a leading case on these issues," but a case which dealt with laches. The *Baker* court then went on to discuss the burden only with respect to the laches defense. In *Continental Coatings*, the court addressed the fact that *Baker* merely considered the laches defense and did "not, in words, discuss estoppel." 464 F.2d at 1380. The *Continental Coatings* court, however, assumed that the *Baker* court was really dealing with estoppel because the judgment in *Baker* directed that the entire suit be dismissed. It is questionable whether the *Continental Coatings* court properly assumed that *Baker* was really addressing the defense of estoppel merely from the type of remedy allowed in *Baker*. It is equally plausible that the *Baker* court applied the law of the defense of laches to an estoppel situation, but still called the defense laches.

More recently, this circuit again addressed these issues in *Advanced Hydraulics*, 525 F.2d at 477. Advanced sent out notices of infringement in June, 1967, to several companies, including Otis, but did not file suit until 1972. The district court

---

law." 517 F.Supp. at 808 (emphasis added). On the other hand, the district court appears to have measured the time period from Naxon's knowledge of the alleged infringement to time of suit, finding that "plaintiff [had] slept on its rights for more than *six years*," the court presumed that "the delay ·itself was unreasonable." *Id.* (emphasis added).

9. We recognize that some language in our opinion today may appear to conflict with broad statements in earlier Seventh Circuit opinions. Our decision, however, is not intended to over-rule any earlier opinions. Rather, our intent is to clarify the differences between these two defenses in a patent case.

10. In contrast, laches emphasizes the element of time. *Gillons v. Shell Co. of Calif.*, 86 F.2d 600, 609 (9th Cir.), *cert. denied*, 302 U.S. 689, 58 S.Ct. 9, 82 L.Ed. 532 (1937).

11. Some of the cases appear to involve the defense of estoppel, but the court mischaracterizes the defense, calling it laches instead.

ruled in favor of Otis on a motion for summary judgment. This court affirmed the judgment for Otis on the ground that "the long, unexcused delay between notice of infringement and filing of suit and the resulting damage required a finding that Advanced was guilty of laches and estoppel, which precluded it from recovery." *Id.* at 479.

It is noteworthy, first, that the court in *Advanced Hydraulics* did not appear to shift the burden to the plaintiff to prove nonprejudice to the defendant,[12] finding that "Otis [made] substantial investments in its business ... and its business grew extensively between June, 1967 and ... 1972." 525 F.2d at 481. Further, the court noted that Advanced's delay in filing the suit prejudiced Otis since a crucial witness died while the motion for summary judgment was under advisement. Finally, the court allowed the defense of estoppel even though the length of delay was five years. This was proper in that a finding of estoppel is not based on any set time period. *Dymo Industries*, 474 F.Supp. at 416 (delay alone is insufficient to bar patentee from enforcing his patent).

 Therefore, we conclude that a defendant cannot shift the burden of proof by raising the defense of estoppel based on the passage of six years. The district court must make a finding that as a matter of law, the period of delay was unreasonable. In contrast, however, it seems well-settled that a court may presume prejudice to the defendant after the passage of six years in finding that laches bars recovery for past damages. Applying the law relating to laches and estoppel to this case, it is helpful to deal with each defense separately.[13]

### IV. Alleged Patent Infringement

#### A. *Laches*

 Laches requires proof of an inexcusable delay that prejudices the defendant. *See generally* Annotation, 35 A.L.R.Fed. 551 (1977). The lapse of six years creates the presumption that the delay is unreasonable and shifts the burden away from the moving party to the plaintiff who then must excuse the delay. In this case, the district court found that the relevant time period began to run in 1970.[14] Since the delay exceeds six years, the burden to justify it is upon Naxon.

(1) With respect to Stewart-Warner, the district court found that the company "ceased its manufacture in 1970" and that this finding negated "any prejudice from plaintiff's delay." Further, it found "no evidence of other factors that would demonstrate any damage to Stewart-Warner."[15] The court noted, however, that Naxon "cannot have it both ways .... If Stewart-Warner did not make, use or sell any allegedly infringing devices after 1970, no infringement by Stewart-Warner occurred by definition during the six-year pe-

---

12. It does not appear that the court shifted the burden of proof because, first, it made specific findings relating to the prejudice defendant suffered because of plaintiff's delay. Moreover, the court compared the facts before it to the facts before the court in *Continental* and noted that in *Continental*, prejudice to the alleged infringer was "simply presumed." Such language appears to indicate that contrary to the *Continental* court, the court in *Advanced Hydraulics* did not presume prejudice. Finally, it is significant that the court sustained a finding of estoppel after a five-year delay. The court made no finding that five years was unreasonable as a matter of law nor did it improperly borrow the presumption after six years and shift the burden.

13. The district court did not appear to address how the laches defense applied to the facts in this case.

14. On appeal, Naxon argues that he had no knowledge until 1973, after the exchange of letters. After sending a formal notice, however, patent owners will not be heard to say that they did not know of the alleged infringement. *Gillons*, 86 F.2d at 605.

15. Upon Naxon's motion for reconsideration, the district court found that Stewart-Warner had made sales of three signs. This evidence would tend to keep the presumption operative. The issue of whether Naxon was barred by laches, however, is academic since summary judgment was proper based on the finding that Stewart-Warner had engaged in no acts which would constitute infringement during the relevant time period.

riod immediately preceding this action." Therefore, the court properly granted summary judgment in favor of Stewart-Warner regarding its liability for past damages. 517 F.Supp. at 809 n.5.

■ (2) As to Bunker Ramo, the district court found that during

the long interval of silence after Naxon's threatened enforcement action Bunker Ramo continued its leasing operations using the allegedly infringing machines. That evidence is totally consistent with the presumption of prejudice. See for example the references to business proceeding unmolested after notice of infringement in *Advanced Hydraulics*, 525 F.2d at 481. Equally important, Naxon has offered not a shred of evidence to meet its burden of overcoming the presumption . . . .

While the district court went on to find that this evidence was sufficient to make out the defense of *estoppel*, we find that for the same reasons, it is proper to affirm the district court's summary judgment in favor of Bunker Ramo on the basis of laches.

(3) As to Merrill Lynch, the district court found that the lease terms, which provided for periodic renewals, would indicate prejudice. Moreover, the absence of any proof *negating* prejudice keeps the presumption operative and justified summary judgment.

## B. *Estoppel*

■ Delay alone is insufficient to bar a patentee from enforcing his patent; the plaintiff must also have conducted himself in such a way that he induced the defendant reasonably to rely to his detriment. *Continental Coatings*, 464 F.2d at 1379–80; *Dymo Industries*, 474 F.Supp. at 416. The doctrine of estoppel requires "representations or conduct which justify an inference of abandonment of the patent claim or that the plaintiff has induced the

infringer to believe that its 'business would be unmolested.'" *TWM Manufacturing Co.*, 592 F.2d at 350.

■ Many courts have held that if a patentee sends a notice of infringement threatening "prompt and vigorous enforcement of the patent," and then by later inaction induces the infringer to believe that he has abandoned objection, the patentee has committed a sufficiently misleading act to estop his enforcement of the patent. *Advanced Hydraulics*, 525 F.2d at 481–82; *Continental Coatings*, 464 F.2d at 1379–80; *Dymo Industries*, 474 F.Supp. at 417. In this case, Naxon wrote both Stewart-Warner and Bunker Ramo in 1973, and later in 1973 indicated that it would "put on notice other known users, installers, maintenance and repair people associated with [the] equipment, warning them regarding contributory infringement and any and all of their own separate liabilities under the law." 517 F.Supp. at 807. Because Naxon then delayed some 58 months, it would be estopped to recover any form of relief if all defendants were prejudiced by the delay.

■ (1) Since the district court found that Stewart-Warner did not make, use or sell any allegedly infringing devices after 1970, no infringement by Stewart-Warner occurred by definition during the six-year period immediately preceding this action. Accordingly, the district court found that there was no material factual dispute and summary judgment in favor of Stewart-Warner was proper under 35 U.S.C. § 286. The court, however, noted that summary judgment on estoppel grounds was inappropriate. Since Stewart-Warner manufactured its last sign in 1970, and none were sold thereafter,[16] there could be no prejudice to Stewart-Warner because of the delay. This left open the potential for future use, but Stewart-Warner stipulated that for the remaining term of the 1966 Naxon patent, it would not make, use, or sell its display devices.[17] Therefore, any question

---

**16.** Naxon filed a motion to reconsider, in which it pointed out that Stewart-Warner had manufactured, sold and/or used three traveling message display signs. The parties, however, compromised their differences with respect to these three devices.

**17.** Since the district court found that Naxon was not estopped with respect to Stewart-Warner's future allegedly infringing actions, it would be necessary to determine the issues of validity and infringement of the Naxon Patent. In order to attain a final, and therefore appealable, judgment, however, Stewart-Warner stipulated, "without conceding either validity or in-

of future liability with respect to Stewart-Warner became moot.

(2) As to Bunker Ramo, there was evidence that it continued its business for several years without challenge by Naxon. "Each [passing] year ... inevitably builds up a belief, if nothing has been done, that the patentee does not suppose his rights invaded." *Baker*, 430 F.2d at 1012. Many courts have relied on a business proceeding unmolested in order to show defendant's prejudice from the delay. *See, e.g., Advanced Hydraulics*, 525 F.2d at 481. This finding, however, usually contemplates that the company "proceeded to make substantial investments in its business ... and [that] its business grew extensively" during the period of delay. *Id.* It is somewhat troublesome in this case, as it was pointed out in oral argument, that while Bunker Ramo actually continued in business, its business did not grow. This may have been due to another product that the company marketed and it is significant that the company stayed in business. The question of whether there was sufficient growth in business to justify a finding of prejudice, however, is addressed to the discretion of the trial judge and will not be disturbed on appeal unless there was a clear abuse of discretion. *Baker*, 430 F.2d at 1009. Finding no such abuse, we affirm the district court's summary judgment in favor of Bunker Ramo on estoppel grounds.

(3) As to Merrill Lynch, the leases from Bunker Ramo were for two years, automatically renewable for successive one-year periods unless terminated. The leasing of the displays has continued at least through the time suit was brought. Therefore, the delay caused sufficient prejudice to Merrill Lynch to warrant the district court's summary judgment in its favor.

### C. Conclusion

In summary, we affirm the district court's summary judgment on the patent infringement count as to each defendant, albeit for slightly different reasons than those of the district court. Naxon is barred by laches from recovering past damages from Stewart-Warner, Bunker Ramo, and Merrill Lynch. Moreover, the defense of estoppel forecloses Naxon from enforcing his patent, and the patent infringement suit therefore fails *in toto*.

### IV. Alleged Antitrust Violation

After examining the briefs and reviewing the record, and based upon the oral argument before this court, we conclude that the district court, in entering its order, properly analyzed the antitrust and fraudulent concealment issues. It found that there was no genuine issue as to any material fact and that all defendants were entitled to judgment as a matter of law on Naxon's antitrust claim. Therefore, we affirm that part of the district court's order and judgment without change and hereby adopt those portions of its opinion. *Naxon Telesign Corp.*, 517 F.Supp. at 809–11.

---

fringement, that for the remaining term of the 1966 Naxon Patent it [would] not make, use or sell its own display devices." 517 F.Supp. at 811 n.8. That made the only open phase of the litigation at the district court moot and the court entered final judgment.