**CHUBB INTEGRATED SYSTEMS, INC., Plaintiff,**

v.

**NATIONAL BANK OF WASHINGTON, et al., Defendants.**

Civ. A. No. 82–3478.

United States District Court, District of Columbia.

Feb. 5, 1987.

See also 103 F.R.D. 52.

George Vandesande, Washington, D.C., Stuart A. White, Curtis, Morris & Safford, P.C., New York City, for plaintiff.

James F. Hibey, Washington, D.C., for defendants.

## MEMORANDUM OPINION

STANLEY S. HARRIS, District Judge.

This matter is before the Court on defendant Docutel/Olivetti Corporation's (hereinafter Docutel) motion for summary judgment. In this case, plaintiff Chubb Integrated Systems, Inc. (hereinafter Chubb), charges Docutel, a manufacturer of automated teller machines (ATMs), and defendant National Bank of Washington (hereinafter NBW), a purchaser of ATMs from Docutel, with infringement of two United States patents owned by Chubb.[1] Docutel has moved for summary judgment on the grounds that Chubb's claims are barred by the equitable doctrines of laches and estoppel.[2] The Court has thoroughly reviewed the parties' voluminous pleadings.[3] That review, and the relevant case law, convinces the Court that the motion for summary judgment should be granted in part and denied in part and that the remaining material factual issues should be scheduled for trial promptly.

---

**1.** As originally filed, Chubb's complaint alleged infringement of five patents. In September of 1984, the parties agreed to dismiss with prejudice the claims and counterclaims involving three of the five patents.

**2.** Docutel was not named as a defendant in the complaint, but entered this action as an intervenor-defendant. The motion is on behalf of Docutel only, but defendants' counsel assert that if the complaint is dismissed with respect to Docutel on the grounds of laches and estoppel, NBW will move to dismiss on the authority of *Kessler v. Eldred*, 206 U.S. 285, 27 S.Ct. 611, 51 L.Ed. 1065 (1907). As that motion is not before the court at this time, the Court expresses no opinion with respect to the parties' arguments on the applicability of the *Kessler* doctrine to this case.

**3.** In addition to the customary opposition and reply briefs, the parties sought to file additional memoranda. Chubb sought to file a supplemental brief in opposition to Docutel's reply brief and the Court granted the request. Docutel subsequently submitted a supplemental reply brief along with a motion requesting permission to file the brief. The Court has not formally ruled on Docutel's motion to file the supplemental reply. In the interest of allowing the parties the fullest opportunity to present their arguments, and in recognition of the principle that the moving party is ordinarily entitled to file the final responsive pleading, the Court formally grants Docutel's motion and accepts the supplemental reply as filed. However, the Court notes that the brief added nothing to the Court's understanding of the issues and thus had no effect on its decision on the instant motion.

*Background*

In 1967, Chubb & Son's Lock and Safe Co., Ltd., a sister company of Chubb, entered into a joint venture with Smiths Industries to develop and market an ATM. Under the agreement, Chubb & Son's was to develop and manufacture the hardware components of the ATM and Smiths Industries was to develop the electronics. Chubb & Son's was also to handle marketing, installation, and service. At roughly the same time, Docutel, then a subsidiary of Recognition Equipment Corporation, was taking over a similar ATM development project from its parent corporation. By 1969, both projects had yielded results and both Smiths/Chubb and Docutel had begun efforts to market their ATMs.

The Smiths/Chubb venture resulted in the issuance of a number of United States patents, including the two involved in this litigation. U.S. Patent No. 3,516,527 (hereinafter "the 527 patent") was issued to Smiths/Chubb on June 23, 1970, and U.S. Patent No. 3,543,904 (hereinafter "the 904 patent") was issued to Smiths Industries on December 1, 1970. Both patents deal with "access control equipment"—the elements of the ATM designed to verify a user's identity by comparing the user's magnetically-encoded identification card with a personal identification number entered manually by the user at the ATM. Both patents are now assigned to Chubb.[4] Similarly, Docutel applied for patents covering its ATM designs and was awarded U.S. Patent No. 3,651,986 (hereinafter "the 986 patent") on March 28, 1972, and U.S. Patent No. 3,662,343 (hereinafter "the 343 patent") on May 9, 1972.

As would be expected in a competitive market, Chubb kept a close eye on the activities of its competitors in the ATM field, including Docutel. When Docutel began marketing ATMs in 1969, Chubb employees prepared reports comparing the features of Docutel's machine to Chubb's. In the early 1970's, Chubb's management began to suspect that some competitors

were infringing the Chubb patents and had patent counsel investigate the matter.

On July 12, 1972, Chubb's patent counsel wrote to Docutel's president. In that letter, Chubb suggested that three Chubb patents, including the 527 patent, "may be of particular interest" to Docutel, and inquired whether Docutel "would be interested in acquiring rights under any or all of the patents...."

On December 6, 1972, Docutel's patent counsel responded by letter to Chubb's license offer, stating:

Our review of the [patents] is continuing. We are proceeding on a somewhat uncertain basis since it is not clear from your correspondence whether you consider the money machines of Docutel to constitute an infringement of the [Chubb] patents or, on the other hand, if the desire of [Chubb] is to license potential users of their patents. If you consider the machines of Docutel to constitute an infringement, your reading of the claims of the patents in question would expedite our review. If [Chubb] is pursuing the latter course, then I would appreciate a guideline of the terms and conditions of such a license and a copy of any license previously granted by [Chubb]. Our people have reviewed the patents and the technology disclosed therein and may wish to consider incorporating certain developments in future machines, if such technology is available by license.

We have reviewed the claims of each of the three patents in question and do not believe that the money machines of Docutel incorporate any of the claimed inventions, as we presently understand them.

We will continue our review to determine if the patents disclose anything of future interest to Docutel and await your reply.

Therefore, in the interest of simplification, the Court hereinafter refers to all actions by Chubb, Smiths Industries, and the Smiths/Chubb venture collectively as actions by Chubb.

---

4. The parties agree that all actions taken, or not taken, by Smiths Industries while Smiths was the assignee of the patents-in-suit are attributable to Chubb for the purposes of this action.

There was no further correspondence between Docutel and Chubb until 1976. From 1976 to 1982 there was sporadic communication between the parties concerning the possibility of Docutel's taking a license under one or more of Chubb's patents. No license was ever negotiated and on December 8, 1982, Chubb initiated this infringement action.

## Discussion

Defendants' motion for summary judgment relies on three distinct grounds: laches, estoppel, and statutory failure to mark. The Court deals with each theory in turn.

### I. Laches

#### A. The Law

■ Although there is no statute of limitations for patent infringement suits, courts have found the equitable doctrine of laches applicable to infringement suits. *See, e.g., Leinoff v. Louis Milona & Sons, Inc.*, 726 F.2d 734, 741 (Fed.Cir.1984). The defense of laches is available when a patentee unreasonably delays in bringing suit, resulting in material prejudice to the defendant. *E.g., A.C. Aukerman Co. v. Miller Formless Co., Inc.*, 693 F.2d 697, 699 (7th Cir.1982); *Studiengesellschaft Kohle v. Eastman Kodak Co.*, 616 F.2d 1315, 1325 (5th Cir.), *cert. denied*, 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980). A finding of laches precludes the plaintiff from recovering damages for any acts of infringement that occurred prior to the filing of suit. *A.C. Aukerman*, 693 F.2d at 699.

■ Because damage relief is statutorily limited to acts of infringement occurring within the six-year period preceding the filing of the lawsuit, *see* 35 U.S.C. § 286, the courts have held that laches will be presumed if the plaintiff has delayed his infringement suit for more than six years after having sufficient knowledge to file suit. *See, e.g., A.C. Aukerman*, 693 F.2d at 699; *Studiengesellschaft Kohle*, 616 F.2d at 1325. Thus, when a plaintiff delays for more than six years in bringing an infringement suit, courts will presume that the delay was unreasonable and that the defendant has been materially prejudiced. The burden then falls on the plaintiff to overcome the presumption by showing that the delay was excusable, that the defendant was not materially prejudiced, or that the defendant has engaged in such egregious conduct that it is not entitled to the equitable benefits of the laches defense. *Naxon Telesign Corp. v. Bunker Ramo Corp.*, 686 F.2d 1258, 1263 n. 7 (7th Cir. 1982).

Under the familiar standard of Fed.R. Civ.P. 56(c), a motion for summary judgment may be granted only when it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." While the fact-intensive nature of the laches defense suggests that summary judgment often will be inappropriate, under the proper circumstances, Fed.R.Civ.P. 56 is applicable in cases such as this. *E.g., A.C. Aukerman*, 693 F.2d at 702; *Naxon Telesign*, 686 F.2d at 1267.

#### B. The Facts

■ The Court initially is confronted with the need to determine when Chubb was sufficiently aware of Docutel's activities to bring suit for infringement. Not surprisingly, the parties suggest two very different answers. Docutel argues that Chubb knew enough about the workings of the Docutel ATMs to have brought suit as soon as the 527 and 904 patents were issued in 1970. Chubb, on the other hand, argues that it gathered information continuously between 1967 and 1982 and that only in 1982 did Chubb truly know that Docutel had infringed its patents. The Court finds neither party's position to be supported by undisputed facts.

The fundamental difference between the parties' positions stems from their disagreement as to how much knowledge a plaintiff must have before commencing a lawsuit. The body of rules providing for extensive pretrial discovery, *see* Fed.R. Civ.P. 26–37, belies Chubb's suggestion that a plaintiff must have complete factual knowledge of the defendant's allegedly wrongful conduct. Conversely, Fed.R.

Civ.P. 11 requires that before signing a complaint, plaintiff's counsel must make "reasonable inquiry" to determine that the claim "is well grounded in fact and is warranted by existing law...." Thus, the Court's task here is to determine whether there is a genuine issue of material fact as to when Chubb was aware of sufficient facts to form a reasonable belief that its patents had been infringed.

With respect to the 527 patent, the Court finds that, as a matter of law, Chubb could have brought suit as early as September of 1972. Chubb's employees had personally observed the operation of Docutel's TOTAL TELLER ATM several times prior to the issuance of the 527 patent in 1970. In addition to collecting media reports on the workings of the Docutel machines, Chubb reviewed a copy of the Operations Manual for the TOTAL TELLER 300 and Docutel's 986 patent. Internal correspondence between Chubb's patent counsel and Chubb's management indicates that Chubb considered infringement by Docutel to be "likely" as early as February of 1972. In April of 1972, Chubb's patent counsel wrote to patent counsel for Diebold, Inc., a licensee of Chubb, stating in part that:

> The disclosure of Patent No. 5,651,906 goes some way to confirm the view here that the Docutel machine infringes certain of our U.S. patent rights. We have been looking into the question of likely infringement for some little time now, and the added disclosure provides further confirmation of our views.

In May of 1972, Chubb's patent counsel prepared a formal report on Docutel's possible infringement and stated that infringement of the 527 patent was "quite probable." Chubb wrote to Docutel offering a license two months later, in July of 1972.

Although Chubb's letter does not directly charge infringement of the 527 patent, Chubb's subsequent internal memoranda clearly indicate that the implication was intended. In September of 1972, Chubb's chairman informed Diebold's president that "[w]e have arrived at a position where it appears that ... Docutel [is] ... apparently in infringement...." In March of 1973, a Chubb official referred to the May 1972 letter as the "letter to Docutel re patent infringements," and in a May 1973 memorandum, a Chubb official stated: "We have written to Docutel and are awaiting their reactions. It is quite clear that they do infringe some of our U.S. issued patents." Thus, Chubb's own words indicate that by May of 1972, when Docutel was offered a license to use the 527 patent, Chubb's management had concluded that it had a legitimate infringement claim.

With respect to Chubb's 904 patent, the Court finds that, as a matter of law, Chubb could have brought suit as early as July of 1972. The May 1972 report, in which Chubb's patent counsel concluded that infringement of the 527 patent was "quite probable," referred to infringement of the 904 patent as, at most, "possible" and listed two issues regarding the operation of the Docutel ATM that required resolution before a judgment could be made: (1) whether "more than six account-identification digits [are] encoded in [the] magnetic stripe of [the user's] card"; and (2) "whether the machine combine[s] numbers read from [the] stripe in deriving the PIN-check number...."

Both of Chubb's questions were answered by Docutel's 343 patent which was issued that same month. First, the 343 patent reveals that six to 14 "account number" digits and six "customer identification" digits are encoded on the Docutel user card. Second, the patent thoroughly discusses, with examples, the manner in which data encoded on the user's card are combined with data programmed into the ATM to verify the validity of the card. Thus, Docutel's 343 patent provided the two pieces of information required to assess the possibility of infringement of Chubb's 904 patent.

Although Chubb probably may be charged with constructive knowledge of the information revealed in Docutel's patent, such an assumption need not be made because Chubb's patent counsel advised Diebold's patent counsel in July of 1972 that he had the 343 patent "under study." Accordingly, the undisputed facts demon-

strate that Chubb was in a position in July of 1972 to assess the validity of its suspicions regarding Docutel's "possible" infringement of the 904 patent.[5]

In summary, the Court finds that there is no genuine issue of material fact as to the point in time at which Chubb first had sufficient information to assess the validity of its infringement claims against Docutel and decide on a course of action. With respect to the 527 patent, Chubb was in a position to sue by May of 1972 when it approached Docutel offering a license under that patent. With respect to the 904 patent, Chubb was in a position to sue in July of 1972 when it received a copy of Docutel's 343 patent. Both of these dates fall more than six years before Chubb filed suit in this case and therefore the presumption of laches applies in this case.[6]

■ Turning to the second element of laches—material prejudice to the defendant—the Court finds that the undisputed facts demonstrate that Docutel has suffered material prejudice as a result of Chubb's 10–year delay in filing suit. It is undisputed that between 1969, when Docutel entered the ATM field, and 1982, when Chubb filed suit, Docutel's annual sales grew from nothing to $52 million. Even if the period between 1969 and 1972 is properly discounted, that three-year period represents less that 1,000 of the 11,400 ATMs sold by Docutel between 1969 and the date of suit. Between 1972 and 1982, Docutel doubled its office space, and during the two years prior to Chubb's filing suit, Docutel spent $2.6 million advertising its products. In addition to the substantial business investment that occurred during Chubb's 10–year delay, relevant documents relating to the development of Chubb's ATMs and to the infringement policies of Chubb's management have been lost. These are just the sort of efforts that constitute "material prejudice" under the laches doctrine. *See, e.g., A.C. Aukerman*, 693 F.2d at 701 (affirming grant of summary judgment); *Studengesellschaft Kohle*, 616 F.2d at 1326–27; *Continental Coatings Corp. v. Metco, Inc.*, 464 F.2d 1375, 1378 (7th Cir. 1972).

Chubb's arguments in opposition are unavailing. First, Chubb notes that in letters to its accountants between 1977 and 1981, Docutel concluded that the eventual resolution of Chubb's claims, whether through licensing or litigation, would "not have a material effect on Docutel's consolidated financial position or results of operation." However, Chubb's position is invalid as to the meaning of "material prejudice" as it relates to laches. The fact that a defendant may be wealthy enough to absorb the costs of a potential judgment does not indicate that the defendant will not be materially prejudiced by a delay in bringing suit. Had Chubb brought suit in 1972 and won, Docutel would have been in a position to structure its business accordingly. Instead, Docutel made substantial financial investments in its ATM business without that opportunity. Chubb's interpretation would improperly link the duties of a delaying plaintiff to the wealth of the defendant.

Chubb's second line of defense is that material prejudice could not have resulted from the delay because Docutel concluded early on that the Chubb patents were invalid and therefore based its conduct on the belief that Docutel would win an infringement suit, not on the belief that Chubb would never sue. Nevertheless, Docutel was denied the certainty of an early determination. A defendant's belief that it will prevail if an infringement suit is brought,

---

**5.** Chubb attributes much of its delay to the fact that its pre-suit investigatory efforts were inhibited by the elaborate security system which must be included in Docutel's ATMs to prevent theft. While such secrecy undoubtedly presented an impediment, it also presented just the sort of situation that liberal rules of discovery were designed to address. Once Chubb had learned enough to conclude in 1972 that Docutel was infringing, it should have used the tools of discovery to build its case, rather than hope that Docutel would voluntarily reveal its secrets over the next ten years.

**6.** Of course, this presumption has no effect on the Court's determination of whether there are genuine issues of material fact. However, because certain issues of fact will remain for trial, the existence of the presumption is relevant to the allocation of the burden of persuasion at trial.

is irrelevant to the issue of material prejudice. *Continental Coatings*, 464 F.2d at 1378. Thus, the Court finds that, as a matter of law, Docutel suffered material prejudice as a result of Chubb's 10–year delay in filing suit.

However, the Court finds that it is not possible to grant full summary judgment on the issue of laches because there remain genuine issues of material fact on whether Chubb's delay should be excused. Specifically, Chubb claims that its delay was attributable, at first, to its reasonable belief that Docutel was interested in taking a license under the Chubb patents, and later, to its reliance on misleading information supplied by Docutel about the inner workings of Docutel's ATMs. Ongoing, bilateral license negotiations will toll the laches period, *e.g.*, *Tripp v. United States*, 406 F.2d 1066, 1071 (Ct.Cl.1969); *Olympia Werke Aktiengesellschaft v. General Electric Co.*, 545 F.Supp. 598, 614 (W.D.Va. 1982), *aff'd*, 712 F.2d 74 (4th Cir.1983), and a finding that the defendant acted inequitably by misleading the plaintiff with regard to the relevant features of defendant's device will preclude the defendant from raising laches. *E.g.*, *Naxon Telesign*, 686 F.2d at 1263 n. 7; *Ritter v. Rohm & Haas Co.*, 271 F.Supp. 313, 349 (S.D.N.Y.1967).

■ Here, Chubb alleges that it was engaged in licensing and settlement negotiations with Docutel that began with its 1972 letter to Docutel and continued through 1982. Docutel responds that it "rejected" Chubb's offer and never gave Chubb any reason to believe that Docutel would take a license. The Court finds that Docutel's response to the Chubb letter, set out *supra*, does not clearly reject the notion of a license and that subsequent correspondence from Docutel fails to resolve the issue. Therefore, it will be necessary to proceed to trial on the negotiation issue. *Compare A.C. Aukerman*, 693 F.2d at 700–01 (sporadic and fruitless negotiations do not toll delay) *with Photon, Inc. v. Eltra Corp.*, 308 F.Supp. 133, 139 (N.D.Ill. 1969) (negotiations between parties make delay reasonable); *Autoclave Engineers,*

*Inc. v. Duriron Co.*, 190 U.S.P.Q. (BNA) 125, 133 (E.D.Pa.1976) (same).

■ Likewise, triable issues of fact remain as to whether Docutel acted with "unclean hands" by promising to supply Chubb with information and then stalling, or by providing Chubb with misleading informaton on the operation of Docutel's ATMs. Clearly, prior to this suit Docutel had no duty to supply information to Chubb. However, once Docutel agreed in 1978 to provide information to Chubb, it had an equitable duty to act fairly and honestly. The Court concludes that Chubb should have an opportunity to demonstrate that Docutel acted deceptively in its provision of information to Chubb.

## II. *Estoppel*

■ To establish the defense of equitable estoppel, a defendant must prove the two elements of laches, unreasonable delay and material prejudice, as well as two additional elements: affirmative conduct by the plaintiff inducing the belief that plaintiff had abandoned its claim, and detrimental reliance by the defendant. *E.g.*, *A.C. Aukerman Co. v. Miller Formless Co.*, 693 F.2d 697, 701 (7th Cir.1982). If the defense is established, the plaintiff is barred from prospective enforcement of the relevant patents. *Id.* Thus, the estoppel defense provides a natural complement to laches, which denies relief for infringement occurring prior to suit.

In support of its estoppel claim, Docutel alleges that Chubb made numerous charges of infringement against other competitors during the 1970's and that Chubb never followed up those accusations with lawsuits against the companies who refused to take licenses. Docutel further alleges that as a result of this record of inaction, it believed that Chubb would never litigate its infringement claims involving the 527 and 904 patents. Chubb responds that litigation was unnecessary with respect to two of its competitors, IBM and Diebold, because those companies agreed to licenses. Chubb asserts that other competitors, such as LeFebure and Mosler, were not sued because their activity in the

ATM field was insignificant. Moreover, Chubb notes that Docutel correspondence from throughout the late 1970's refers to the "possibility" of litigation with Chubb.

■ As noted above, the Court finds that there is no triable issue of fact on the issues of delay and prejudice. However, as with the excuse issue under laches, the Court finds that there are genuine issues of material fact as to whether Chubb's conduct could reasonably be interpreted as an abandonment of the litigation option, and also as to whether Docutel believed that Chubb actually had done so. Thus, the Court grants summary judgment with respect to the issues of unreasonable delay (subject to trial on the excuses of license negotiations and "unclean hands," as mentioned above) and material prejudice, but will deny summary judgment on the issues of misleading conduct and detrimental reliance.

### III. *Statutory Failure To Mark*

Docutel's final ground for summary judgment is based on 35 U.S.C. § 287, which provides that unless the plaintiff's product is marked with the plaintiff's patent number, the plaintiff may recover damages only

> on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice.

Chubb concedes that its ATMs never carried the numbers of the 527 and 904 patents. Thus, if Chubb prevails on its infringement claims, § 287 will be relevant to the scope of available relief. Although one court has chosen to defer resolution of this issue until it becomes clear that the plaintiff will be entitled to some relief, *see Ampex Corp. v. United States*, 213 U.S.P.Q. (BNA) 382, 383 (Ct.Cl.1980), the Court sees no reason why the issue cannot be resolved now, simplifying future action in this matter.

■ The relevant issue is when Docutel received notice of the infringement. Docutel argues that because none of Chubb's letters suggesting a license openly charged infringement, it did not receive statutory notice of infringement until suit was filed in 1982. However, Docutel concedes that it understood Chubb's 1972 letter to be charging infringement of the 527 patent. The notice requirement of § 287 is satisfied when the defendant is aware that the patentee is claiming infringement. *International Nickel Co. v. Ford Motor Co.*, 166 F.Supp. 551, 567 (S.D.N.Y.1958). The 1972 letter was therefore sufficient to satisfy the notice requirement of 35 U.S.C. § 287. "When one acknowledges ... that the adversary is claiming infringement, the law most certainly does not compel the patent owner to repeat it more explicitly." *Id.* (quoting *Livesay Window Co. v. Livesay Industries*, 251 F.2d 469, 475 (5th Cir. 1958)). Therefore, Chubb's damages would be limited to acts of infringement occurring after Docutel's receipt of the 1972 letter.

The 904 patent was not mentioned in Chubb's 1972 letter. It was not until 1976, when Chubb renewed its offer of a license, that the 904 patent was mentioned in correspondence between the parties. Because Docutel has conceded that it understood Chubb's licensing letters to be veiled charges of infringement, the notice requirement of § 287 was satisfied with respect to the 904 patent in July of 1976, when Chubb offered Docutel a license under that patent.

Under 35 U.S.C. § 286, Chubb may not recover damages for acts of infringement occurring more than six years before it filed this suit on December 8, 1982; the most that Chubb can hope to recover is relief based on acts of infringement that occurred after December 8, 1976. Consequently, the Court's findings under 35 U.S.C. § 287 will have no effect on the scope of damage relief available in this case, because Docutel was aware of Chubb's infringement claims more than six years before this suit was filed.

### *Conclusion*

· ■ The Court finds that there are a number of legal issues which may be resolved on the basis of undisputed facts, making it possible for the Court to resolve the remaining issues in a more simplified

trial on the merits. With respect to the laches defense, the Court finds no genuine issue of material fact on the elements of delay and material prejudice. Accordingly, trial should be limited to determining whether Chubb's delay should be excused because Chubb was engaged in bona fide licensing negotiations, or because Docutel acted with "unclean hands," thus depriving itself of the right to raise equitable defenses. Because the delay in this case exceeded six years, Chubb will bear the burden of persuasion on these issues.

With respect to the issue of estoppel, the Court again finds no genuine issue of material fact on the elements of delay and material prejudice. Trial will be limited to the issues of excuse, as described above, affirmative misconduct by Chubb, and detrimental reliance by Docutel. However, unlike laches, a delay of six years or more creates no presumption of estoppel. *Naxon Telesign Corp. v. Bunker Ramo Corp.*, 686 F.2d 1258, 1263–64 (7th Cir. 1982). Therefore, Docutel will bear the burden of persuasion on these remaining issues.

With respect to the marking defense, the Court finds no genuine issue of material fact on the issue of when Docutel became aware that Chubb was claiming infringement, and accordingly no genuine issue of material fact on when Docutel received the notice required by 35 U.S.C. § 287. Because Docutel's notice predates the six-year limitation period imposed by 35 U.S.C. § 286, Docutel's motion must be denied on the marking issue.

Finally, the Court finds that a separate trial on the remaining issues raised by Docutel's motion for summary judgment would expedite the case and promote judicial economy. *See Olympia Werke Aktiengesellschaft v. General Electric Co.*, 470 F.Supp. 966 (W.D.Va.1979) (ordering separate trial on issues of laches and estoppel); *see generally* Fed.R.Civ.P. 42(b) (authorizing separate trials when in interest of justice). Several considerations compel this conclusion. First, the remaining issues are potentially dispositive, and therefore a separate trial might obviate the need for trial of the infringement issues. Second, such a trial could be scheduled and conducted rather expeditiously because the parties already have had the opportunity to thoroughly brief the issues involved. Third, since this case will be tried to the bench, rather than to a jury, there need be no concern about the effects of severance on the trier of fact. Fourth, there should be very little overlap of the evidence relevant to the remaining laches and estoppel issues with the evidence relevant to the infringement issues. Therefore, the Court will schedule a status call at which the Court will set dates for the conclusion of discovery (if any remains) and the trial of the remaining laches and estoppel issues. If, after that trial, a trial on the merits remains necessary, the Court will rule on defendants' pending motion for separate trials on the issues of liability and damages.

Accordingly, defendant Docutel's motion for summary judgment is granted in part and denied in part, and a separate trial of the remaining factual issues will be scheduled. An Order to that effect accompanies this Memorandum Opinion.

## ORDER

This matter is before the Court on defendant Docutel/Olivetti Corporation's motion for summary judgment. As explained in the accompanying Memorandum Opinion, after thorough consideration of defendant's motion, the opposition thereto, and the entire record, the Court concludes that the motion should be granted in part and denied in part. Accordingly, it hereby is

ORDERED, that defendant's motion for summary judgment is granted with respect to the issues of delay and material prejudice, as they relate to the defenses of laches and estoppel. It hereby further is

ORDERED, that defendant's motion for summary judgment is denied with respect to the issues of bona fide licensing negotiations and unclean hands, as they relate to the laches defense, and is denied with respect to the issues of excuse, affirmative misconduct, and detrimental reliance, as

they relate to the defense of estoppel. It hereby further is

ORDERED, that defendant's motion for summary judgment is denied with respect to the marking defense under 35 U.S.C. § 287. It hereby further is

ORDERED, that the remaining factual issues in defendant's laches and estoppel defenses will be tried separate from and prior to trial of plaintiff's infringement claim.

SO ORDERED.