**Albert L. WOKAS, Plaintiff,**

v.

**DRESSER INDUSTRIES, INC., d/b/a Wayne Dresser, Defendant.**

No. 1:96–CV–0297.

United States District Court, N.D. Indiana, Wayne Division.

Sept. 12, 1997.

David R. Melton, Barnes and Thornburg, South Bend, IN, D. Randall Brown, Bobby B. Gillenwater, Richard E. Steinbronn, Barnes and Thornburg, Fort Wayne, IN, for plaintiff.

Thomas A. Herr, Barrett and McNagny, Fort Wayne, IN, Peter B. Bensinger, Jr., Philip S. Beck, Shawn F. Fagan, Christopher J. Lind, Bartlit, Beck, Herman, Palenchar and Scott, Chicago, IL, for defendant.

## ORDER

WILLIAM C. LEE, Chief Judge.

This matter is before the Court on Defendant Dresser Industries, Inc.'s ("Dresser") Motion for Partial Summary Judgment to Limit Potential Damages under 35 U.S.C. § 287. For the reasons stated herein, Dresser's motion is denied.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires a court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512; *North Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.*, 89 F.3d 452, 455 (7th Cir.1996); *In Re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir.1988). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact."

*Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt*, 862 F.2d 646, 649 (7th Cir.1988); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.1983), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983); *Guenin v. Sendra Corp.*, 700 F.Supp. 973, 974 (N.D.Ind.1988). In ruling on a summary judgment motion, a court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511; *North Am. Van Lines, Inc.*, 89 F.3d at 455. However, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Ill. Nat'l Bank*, 704 F.2d 361, 367 (7th Cir.1983)

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; *First Nat'l Bank of Cicero v. Lewco Secs. Corp.*, 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355–56. A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficiency disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512.

## FACTS

On July 30, 1996, Albert Wokas served a complaint on Dresser accusing Dresser of infringing or a patent he held for a combination of components for a gasoline vapor recovery system; the patent is numbered as U.S. Patent 4,166,485 (the "485 patent"). Wokas alleges that Dresser's infringement began in the spring of 1993 and continued until the expiration of the 485 patent on September 4, 1996. He seeks to recover infringement damages for that entire time period.

Dresser contends that at most, it can only be liable for infringement after July 30, 1996. Dresser's theory is based on its contention that a licensee under the 485 patent, Tokheim Corporation ("Tokheim"), failed to mark the products it manufactured and sold under the 435 patent (the "licensed products") with the patent number, as required by 35 U.S.C. § 287(a). Pursuant to § 287(a), when someone manufacturing "for or under" a patentee, which includes a licensee, fails to mark, a patentee may not recover from an infringer during that time period unless the patentee has given the infringer actual notice of infringement. Dresser contends that it did not receive actual notice of infringement until Wokas's complaint was served to it on July 30, 1996. Section 287(a) specifically provides that "Filing of an action for infringement shall constitute notice."

Tokheim became a licensee under the 485 patent on June 7, 1996, via the execution of the Technology Agreement with Wokas. The Technology Agreement was signed as part of a settlement agreement for Tokheim's past infringement on the 485 patent. The Technology Agreement prospectively authorized Tokheim to manufacture and sell products under the 485 patent. Sometime between June 7, 1996, and September 4, 1996, Tokheim, according to its Vice President and General Counsel, may have sold 261 licensed products. It is undisputed that Tokheim failed to mark any of the licensed products with the 485 patent number, but it is not clear when those licensed products, which were component parts of gasoline pumps, were shipped to customers or installed for public use. It is also undisputed that, prior to June 7, 1996, neither Wokas nor anyone else had ever manufactured or sold a product under the 485 patent.[1]

Wokas claims that even though Tokheim failed to mark its products, Dresser is still liable for infringement because Wokas gave it actual notice of infringement back in 1993 and again in 1994. Wokas claims that the notice in 1993 stems from a letter he sent to Dresser's president, Hilton, on July 14, 1993. Wokas cites not only the contents of the letter but also the reactions of various Dresser employees to it as evidence that it notified Dresser of infringement in accordance with Section 287(a).

Wokas claims that the notice in 1994 stems from various conversations he had with other Dresser representatives, in which he contends that he informed them of his belief that Dresser was infringing on his 485 patent. His evidence of this are the written statements, internal memoranda, and testimony from various Dresser employees and representatives which Wokas claims indicate. that he communicated his belief that Dresser was infringing the 485 patent.

Wokas also contends that, even if it is found that no actual notice was given to Dresser until July 30, 1996, Dresser is still liable for infringement up until the time the licensed products sold by Tokheim were actually installed. Wokas's reasoning is that since neither he nor anyone else was manufacturing or selling under the 485 patent up until one of those dates, there was no duty to mark under 287(a) up until that time. Dresser contends that Tokheim's failure to mark precludes Wokas from recovering not only after Tokheim was licensed, but also from the time Tokheim began its infringement.

## DISCUSSION

Section 287(a) limits a patentee's ability to recover if the patentee or "persons making, offering for sale, or selling within the United States any patented article for or under [the patentee]" failed to mark the patented article. If a patentee or someone acting "for or

---

1. "Under" is a term of art which means under the authority of the patent holder.

under" him does fail to so mark, § 287(a) allows the patentee to recover only "on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only after such notice." This is known as actual notice.

■ The marking and notice requirements of § 287(a) are not applicable to situations where the patented item is not made or sold by the patentee or persons operating "for or under" the patentee. *See Refac Electronics v. A & B Beacon Business Machines,* 695 F.Supp. 753, 755 (S.D.N.Y.1988) (citing *Wine Railway Appliance Co. v. Enterprise Railway Equipment Company,* 297 U.S. 387, 56 S.Ct. 528, 80 L.Ed. 736 (1936)). Accordingly, "a patentee with an unutilized patent may do nothing before bringing a suit to collect damages for infringement, while one producing or selling the goods is under an obligation to provide notice before exercising patent rights." *Medical Graphics Corp. v. SensorMedics Corp.,* 36 U.S.P.Q.2d 1275, 1278, 1995 WL 523633 (D.Minn.1995) (quoting *Refac,* 695 F.Supp. at 755).

The parties arguments can be summarized as follows. Wokas claims that: (i) he was under no duty to comply with § 287(a) until the licensed products sold by Tokheim were installed (sometime after June 7, 1996), and thus may recover for damages up until that time irrespective of marking or actual notice, and; (ii) that even if the notice duty arose before that time, actual notice was provided in 1993 or 1994. Dresser claims that it cannot be liable for infringement occurring before July 30, 1996, the date it was given actual notice, because (i) it did not receive actual notice before that date, and; (ii) Dresser's licensing of Tokheim and Tokheim's subsequent failure to comply with 287(a) precludes Wokas from recovering damages from the time Tokheim began its infringement up until the time Wokas filed the complaint against Dresser.

The issues in this case are really quite straightforward. One, when do the adverse consequences of a failure to mark arise? (*i.e.* at what point does the failure to mark begin to preclude the recovery of damages from an infinger?). Two, when did Wokas give actual notice to Dresser than Dresser was infringing on the 485 patent? Three, does Tokheim's failure to mark preclude Wokas from recovering damages for Dresser's infringement before Tokheim obtained its license, absent actual notice?

**I. When do the Adverse Consequences of a Failure to Mark Arise?**

This dispute is over whether the § 287(a) duty to mark began with Tokheim's manufacturing of the products under the 485 patent, or whether those products had to be injected into the marketplace (in Wokas's view, installed) before the duty to mark arose. This issue affects only the period between June 7, 1996, the date of the Technology Agreement, and July 30, 1996, the date Dresser was served with the complaint. Wokas claims that the duty to mark arises only when a product is made available to the public, not when it is simply manufactured without being distributed. Wokas contends that Tokheim's unmarked units were available to the public only upon installation, and that there is an issue of fact as to whether any of Tokheim's gas pumps containing the licensed products were installed before July 30. Wokas argues that therefore it cannot he held at the summary judgment stage that Wokas is precluded from recovering damages between June 7, 1996, and July 30, 1996. Dresser contends that the admission of Tokheim's Vice President and General Counsel, Norman I. Roelke, that Tokheim may have manufactured and sold 261 licensed products between June 7, 1996 and September 4, 1996, is enough to bring Tokheim within the purview of § 287 on June 7, 1996. therefore, Dresser says that, at the least, it can't be liable for infringement between June 7, 1996, and July 30, 1996.

■ Neither party is exactly correct. *American Medical Systems v. Medical Engineering Corp.,* 6 F.3d 1523 (Fed.Cir.1993), provides that the relevant standard for when the failure to mark under Section 287 begins to preclude the recovery of damages is the time when the plaintiff began shipping the products. *American Medical,* 6 F.3d at 1537. Although Wokas seizes upon *American Medical's* language that "marking alone

844

without distribution provides no notice to the public" and concludes that therefore the failure to mark before any of the unmarked pumps were installed is inconsequential it is clear that *American Medical* held that notice to the public occurred when the products were shipped.

Dresser protests that *American Medical* is inapplicable because it dealt with a situation in which a plaintiff was attempting to satisfy his burden of proving that he marked, whereas here it is undisputed that Tokheim never marked. That distinction is unimportant. If marking at a given time satisfies 287(a), it follows logically that the adverse consequences from failure to mark also arise at that time.

■ Therefore, this Court holds than dresser cannot be liable for infringement between the date Tokheim began shipping the unmarked products (the "Shipping Date") and July 30, 1996, the date it received actual notice of infringement, unless it is found that actual notice occurred sometime before that date. However, just when Tokheim began shipping is not clear from the record. That date will have to be established at trial.

## II. When did Wokas Give Actual Notice to Dresser that Dresser Was Infringing on the 485 Patent?

As stated previously, it is undisputed that actual notice was given by the service of the complaint on Dresser on July 30, 1996, as explicitly provided by § 287(a). At issue is whether actual notice was given at any time before that. Wokas claims that he gave actual notice of infringement to Dresser via a letter dated July 14, 1993, or at the latest in conversations with Dresser representatives sometime in 1994.[2] Dresser disputes both those claims. It is clear that Dresser is

potentially liable for any infringement occurring after actual notice was received.

■ "For purposes of section 287(a), notice must be of the 'infringement,' not merely notice of the patent's existence or ownership." *Amsted Inds. v. Buckeye Steel Castings*, 24 F.3d 178, 187 (Fed.Cir.1994). *See also Dunlap v. Schofield*, 152 U.S. 244, 247–48, 14 S.Ct. 576, 577, 38 L.Ed. 426 (1894). "Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Id. See also Dunlap*, 152 U.S. at 247–48, 14 S.Ct. at 577 (notice is an "affirmative act, and something to be done by [the patentee]"). However, the notice need not necessarily include the word "infringement"; phrases such as "covered in" may be enough to suffice. *See Konstant Products Inc. v. Frazier Industrial Co.*, 25 U.S.P.Q.2d 1223, 1226, 1992 WL 404224 (N.D.Ill.1992).[3]

### A. *The July 14, 1993 Letter*

■ Wokas's July 14, 1993 letter was addressed to Mr. Hilton, the president of Dresser's Wayne division. The letter reads:

**Subject: Gasoline Vapor Emission Control**

**Dear Mr. Hilton,**

**It has come to my attention that vapor recovery hoses, nozzle spouts, and seals contained in my patent number 4,165,485 are now being or planned to be marketed.**

**I would be interested in offering Wayne Pump Company an exclusive license in this area that precludes others from using same.**

It is clear to the Court that this letter at the least raises an issue of fact as to whether it constitutes actual notice. Although Wokas does not use the word "infringe" or threaten

---

**2.** Wokas contends that Dresser has waived the right to contest whether the pre-complaint contacts constituted actual notice because Dresser failed to address those contacts in its initial brief. The Court agrees with Dresser on this issue. Dresser is only required to raise its own arguments; it is not required to anticipate Wokas's arguments and reply to them before the fact.

**3.** Contrary to Dresser's contention, this Court does not think *Amsted* requires that the word "infringement" be used. *Amsted* requires a "specific charge" of infringement. Given the right context, the words "contained in" or similar words could be read synonymously with "infringement," and thus could be sufficient to put the defendant on notice that the patentee is charging infringement, which is all that the statute requires.

litigation, he clearly states that it is his understanding that Dresser is either currently marketing or planning to market products "contained in" his patent. Certainly, a factfinder could conclude that the language "contained in" is a charge that the products Dresser is marketing or planning to market are an infringement of Wokas's patent. *See, e.g., Konstant,* 25 U.S.P.Q.2d at 1226–27.

Dresser vigorously argues that Amsted precludes a finding that this letter constituted actual notice to Dresser. The Court thinks otherwise. The letter which was disputed in *Amsted* never charges that the recipient in that case was actually making or marketing, or planning to make or market, any product covered by the sender's patent. It simply states, "you should acquaint yourself with the [relevant patent] and refrain from supplying or offering to supply component parts which would infringe or contribute to the infringement of the patent." *Amsted,* 24 F.3d at 186. This is clearly not a warning of current infringement, but rather simply a general notification of the existence of a patent and an advisement to become acquainted with such patent to avoid possible infringement.

In contrast, Wokas's letter affirmatively states Wokas's belief that Dresser was currently in the process of marketing or planning to market specific products "contained in" the 485 patent. Wokas clearly lists both the products and the patent number. In no way does it resemble the *Amsted* letter's merely cautionary wording. Thus, the Court finds *Amsted* to be inapposite to the facts of this case.

Furthermore, even though on its face Wokas's letter is enough, standing alone, to raise in issue of fact, that Dresser representatives believed the letter to be an accusation of infringement lends credence to Wokas's position.[4] Although Dresser is correct that its subjective belief that it was infringing on Wokas's patent is irrelevant, *see Amsted,* 24 F.3d at 187, it does not follow that it is

irrelevant as to whether Wokas's letter charged infringement. If Dresser representatives could conclude that the letter charged infringement, certainly a factfinder could conclude the same.

### B. Conversations between Wokas and Dresser Representatives

■ Even if the factfinder ultimately concludes that the July 14, 1992 letter did not constitute actual notice of infringement, Wokas had other contacts with Dresser well prior to July 30, 1996, which also raise a genuine issue of fact as to whether actual notice was given.

The first such contact took place at a meeting between Wokas and two Dresser representatives, Ken Taylor and Jack Todd. Shortly thereafter, Taylor and another representative, Bill Peoples, met with outside patent counsel to discuss, among other things, Wokas. Peoples's notes from that meeting state, "W. says infringing by use of boot."[5] After that, Taylor wrote a letter to Peoples which stated, "[w]hat is the strength of the Wokas claim that we are infringing his patent." In addition, Todd has testified that at some point, he had become aware of the Wokas patent and a potential infringement issue and had asked "the proper people—that is the legal people—what do you think of this?"

Another such conversation occurred in October of 1994, during the last face-to-face meeting between Wokas and a Dresser representative; that representative was Bill Peoples. Peoples admits that during that meeting, Wokas at some point "loosely characterized" his belief that Dresser was infringing the 485 patent at least in part through its use of a vapor escape guard or VEG.

There is also evidence that Wokas on several other occasions spoke with Greg Schaub, another Dresser employee, and conveyed his belief that Dresser was infringing on his 485 patent with the Wayne Vac System. The primary evidence of that is an internal mem-

---

**4.** The evidence that Dresser believed Wokas had charged infringement in the July 14, 1993 letter consists of the following: (i) Dresser's President, James Hilton, contacting patent counsel, and (ii) Hilton's memorandum stating that Hilton was

"not interested in a major parent battle with Wokas."

**5.** Peoples admits that the "W." refers to Wokas.

orandum written by Schaub and dated March 25, 1994. In it, Schaub relates details of a conversation he had with Wokas in which Wokas said, "his [Wokas's] design looks just like the Wayne Vac Nozzle."

These written statements and admissions by Peoples, Taylor, Todd, and Schaub create an issue of fact as to whether Wokas ever informed any of them that Dresser was infringing on the 485 patent. The Court again emphasizes that it is not Dresser's subjective belief as to whether it was infringing on the 485 patent that is at issue. However, these statements are not evidence of Dresser's subjective belief, but rather they constitute direct evidence that Wokas gave Dresser actual notice of infringement. Indeed, it would be difficult to conceive of evidence that is more direct than Peoples's written statement, "W. says infringing by use of boot." In addition, it has been held that the notice requirement of § 287 is satisfied where the infringer acknowledges a specific communication to be a notice of infringement. See Chubb Integrated Sys., Inc. v. Nat'l Bank of Washington, 658 F.Supp. 1043, 1051 (D.C.Cir.1987) ("[w]hen one acknowledges ... that the adversary is claiming infringement, the law most certainly does not compel the patent owner to repeat it more explicitly.") (quoting Livesay Window Co. v. Livesay Industries, 251 F.2d 469, 475 (5th Cir.1958)).[6]

Dresser argues that Wokas's repeated negative answers to the questions of whether he ever accused Wayne of infringement are conclusive evidence that he never gave actual notice of infringement. That testimony is not conclusive in this case. After his deposition, Wokas filed an errata sheet claiming that he had misunderstood another question relating to whether he ever accused Dresser of infringement. That question was: "Do you recall using any other terminology [for accusing Dresser of infringement]?" Although Wokas's original answer was no, his errata sheet changed the answer to "yes,"

and cited to his July 14, 1993 letter as an instance of his using other terminology. Although Wokas's errata sheet does not specifically withdraw his answers to the questions of whether he accused Dresser of infringement, in light of Wokas's errata sheet changing his answer to a related question, as well as the objective evidence discussed above, the Court finds that sufficient ambiguity exists to put the question of whether Wokas ever charged Dresser with infringement to the factfinder.

### III. Does Tokheim's Failure to Mark Preclude Wokas from Recovering Damages for Dresser's Infringement Before Tokheim Obtained Its License, Absent Actual Notice?

Wokas contends that even if the factfinder concludes that no actual notice occurred before July 30, 1996, Dresser is still liable for infringement prior to the Shipping Date. Wokas's reasoning is that since it is undisputed that no one, including himself, was manufacturing or selling "for or under" the 485 patent prior to that time, there was no duty under § 287(a) to mark or give actual notice. Dresser asks this Court to hold that Wokas's licensing of Tokheim and Tokheim's failure to mark precludes Wokas from recovering not only after the license grant, but also before the license was granted, beginning with the date on which Tokheim began its infringement.[7] In support of its argument, Dresser relies primarily on the case of Konstant Products Inc. v. Frazier Industrial Co., 25 U.S.P.Q.2d 1223.

Konstant involved two companies, Konstant and Frazier, who had both infringed on a patent held by a German citizen, Erich Doring (the "Doring patent"). During eventually reached a settlement agreement with Frazier on September 7, 1989; that agreement involved an assignment of all of Doring's "right, title, and interest" in the Doring patent to Frazier, including the right to sue.

---

6. The Court notes that it is not denying summary judgment on this theory, but on the theory that the statements and admissions are direct evidence of what Wokas said. Whether or not Chubb is a correct statement of the law will be decided later, if necessary. The lower Amsted court held that it was, but the Federal Circuit on

appeal expressly declined to address the issue. Amsted, 24 F.3d at 187 n. 5.

7. The Court notes that the date on which Tokheim began its infringement is disputed by the parties, and will have to be established at trial.

The assignment effectively authorized Frazier's past infringement of the Doring patent, which had been occurring since sometime in 1987. Obviously, Frazier had not been marking the infringing products it was manufacturing and producing. However, even after receiving the assignment in 1989, Frazier still neglected to mark the now-authorized products. Frazier did, however, give actual notice to Konstant that Konstant was infringing on the patent now held by Frazier. Konstant ignored the letter and continued to infringe. On August 1991, Frazier sued Konstant for patent infringement, asking for damages accruing for the time periods both after Frazier gave Konstant actual notice (the "Frazier period"), and also before that period, when Doring still held the patent (the "Doring period") (recall that Frazier's past infringement was now authorized and that Frazier also held all rights under the Doring patent, including the right to sue).

The *Konstant* court had little trouble deciding that Konstant was liable for damages during the Frazier period, since it had been provided with actual notice of infringement. More troubling was Konstant's liability during the Doring period. It was undisputed that Doring had no § 287(a) notification duty during the Doring period, since he was not manufacturing under the Doring patent and since he had authorized no one else to do so either. However, the court held that because the assignment retroactively authorized Frazier's past infringement, Frazier's duty to mark or provide actual notice arose not on September 1989, the date of the assignment, but rather back in 1987, the date Frazier began infringing (which after the assignment was no longer an infringement). Therefore, the court concluded that since Frazier had failed to mark its products or provide actual notice at that time, Frazier was precluded from recovering damages during the Doring period.

Dresser asks this Court to analogize from *Konstant* and hold that the licensing of Tokheim and Tokheim's failure to mark also precludes Wokas from recovering both before and after granting the license to Tokheim. Dresser contends that the distinction between the assignment in *Konstant* and the license agreement in this case is "illusory." This Court disagrees. In *Konstant*, the fact that the assignment retroactively authorized Frazier's infringement made all the difference. The assignment gave Frazier all the rights of the patentee, even during the time it occupied the position of an infringer. *Id.* at 1226. The *Konstant* court held that Frazier could not have those rights without imposing upon it the corollary duty to mark or notify, effectively making the duty to notify retroactive to the time Frazier began its infringement. Clearly, the *Konstant* court was concerned that Frazier was attempting to have its cake and eat it too, by having "the rights afforded a patentee while it occupied the position of an infringer, while at the same time granting Konstant none of the notice required by patentees by Section 287." *Konstant*, 25 U.S.P.Q.2d at 1226.

In this case, entirely different circumstances exist. For one, the Technology Agreement is a prospective license which only gives Tokheim authority to manufacture under the 485 patent starting on June 7, 1996. There is no allegation or indication that Tokheim's past infringement was authorized by the Technology Agreement. In addition, Tokheim acquired merely a license, which was in essence only a right not to be sued for manufacturing items contained in the 485 patent. *See* Peter D. Rosenberg, 3 *Patent Law Fundamentals* § 16.01[1][b] (2d ed. 1997 Revision). Wokas continued to retain all rights in the 485 patent until its expiration in September of 1996. In *Konstant*, Frazier obtained all of the rights in the Doring patent, including the right to sue for infringement past and future. Furthermore, Konstant involved the odd situation where one wrongdoer was attempting to collect damages from another wrongdoer during the time period in which both were engaged in the same wrongful act. Here, it is the original patentee who is bringing suit. It is clear to this Court that *Konstant* is very fact specific and simply does not stand for the general proposition that a licensee's failure to mark or notify precludes a patentee from collecting damages from other infringers before the license was granted.

Even if *Konstant* supported Dresser's position, this Court is not bound by that decision and would decline to follow it. To do so could have extremely deleterious effects on patent case settlements when there is more than one infringer. Granting licenses to an infringer is a very effective method of settling a patent dispute. Such a settlement is beneficial to both parties: the infringer may continue to manufacture the covered products and thus continue to make profits, and the patentee inevitably receives more money from the settlement because of the infringe's expectation of future profits. If the Court were to hold in favor of Dresser on this issue, a patentee would be forced to pick only one defendant to settle with out of a multitude of infringers, provided he wanted to use the licensing-method of settlement. Thus, he would be forced to attempt to extract a higher settlement amount from that one infringer because he would be precluded from collecting from any other infringers. Not only would that impede settlements, but it would also have the pernicious effect of allowing a host of other wrongdoers to get off scot-free. Simply stating this likely result further convinces this Court that *Konstant* cannot stand for the proposition Dresser espouses.

To conclude this issue, licensing Tokheim does not preclude Wokas from recovering against other infringers before the date Tokheim and Wokas became obligated to comply with § 287(a)—which the Court has previously held to be the Shipping Date. Wokas had no duty to mark or give notification until such date. Therefore, Dresser is potentially liable for damages for all of the time previous to the Shipping Date, whether or not it had actual notice before then. It should be emphasized that just as a finding that actual notice was given via the July 14, 1993 letter would make this issue largely moot (since that finding would make Dresser Liable for all times thereafter even if the § 287(a) duty were retroactive), this holding makes the issue of actual notice moot except for the less than two-month period between the Shipping Date and July 30, 1996. Dresser is liable for all infringement which occurred before the Shipping Date (if it is found that such infringement did occur), irrespective of whether actual notice was given before that time or not.

## CONCLUSION

To summarize, the Court holds that there are genuine issues of fact with respect to: (i) when Tokheim began shipping the licensed products; and (ii) when Wokas gave Dresser actual notice of infringement. The Court also holds that Dresser is potentially liable for any infringement it committed before the Shipping Date.

For the foregoing reasons, Dresser's Motion for Partial Summary Judgment to Limit Potential Damages under 35 U.S.C. § 287 is DENIED.